Fiscus, Administrator, *v.* Moore.

Filed Jan. 28, 1890.

———————◆———————

No. 15,048.

FISCUS, ADMINISTRATOR, *v.* MOORE.

DECEDENTS' ESTATES.—*Administrator's Sale to Pay Debts.*—*Heir's Share of Proceeds.*—*Set-Off of Against Debt Due Estate.*—*Creditors.*—A debt due the estate of an intestate from an heir may be retained out of his distributive share of the surplus proceeds of real estate, which has been regularly sold in order to make assets to pay debts, as against one who took a mortgage on the undivided interest in the land sold, the mortgage having been taken pending the settlement of the estate, with knowledge of the indebtedness of the heir. OLDS, J., and BERKSHIRE, J., dissent. *Ball v. Green,* 90 Ind. 75, modified.

Fiscus, Administrator, v. Moore.

SAME.—*Right of Heirs.—Lien-Holders with Notice.*—The right of heirs to participate equally in the estate of their ancestor is superior to that of a lien-holder with notice.

From the Decatur Circuit Court.

*J. S. Scobey,* for appellant.

*W. A. Moon,* for appellee.

MITCHELL, C. J.—William Fiscus, late of Decatur county, died intestate, in February, 1885, leaving a widow and seven children to whom his real estate descended as tenants in common. After the death of the intestate Marion Fiscus, one of the heirs, who was indebted to the estate in a large amount, executed a mortgage, on his individual interest, in certain real estate which he inherited from his father, to secure an individual debt due from him to William A. Moore, the latter having at the time full and complete notice of the debt due from the mortgagor to his father's estate. Subsequently the administrator, by due proceedings for that purpose, obtained an order of the probate court, and sold all the real estate for the purpose of making assets for the payment of debts owing by the intestate. After paying the debts there remained $2,500 of the proceeds of the sale of real estate in the administrator's hands for distribution, but the distributive share of Marion Fiscus was much less than the amount of his debt due the estate. Moore, as the mortgagee, applied to the court for an order on the administrator requiring him to pay the amount of the mortgage debt out of the proceeds of the sale of the land upon which he had taken a mortgage from Marion Fiscus. The order was made accordingly.

The question for decision is whether a debt due from an heir can be retained out of his distributive share of the surplus proceeds of real estate which has been regularly sold in order to make assets to pay debts, as against one who took a mortgage on the undivided interest of the heir in the land sold, the mortgage having been taken pending the settle-

ment of the estate, with knowledge of the indebtedness of the heir.

That the indebtedness of an heir, or distributee, constitutes part of the assets of the estate, which it is the duty of the administrator to collect for the benefit of the creditors, and other distributees, and that such indebtedness may be deducted from the distributive share of the debtor, are well settled propositions. The right of the administrator to deduct the indebtedness due from a distributee is usually denominated a right of set-off. But, as Lord Cottenham remarked in *Cherry* v. *Boultbee*, 4 Mylne & Craig, 442, "the term 'set-off' is very inaccurately used in cases of this kind. In its proper use, it is applicable only to mutual demands, debts and credits. The right of an executor of a creditor to retain a sufficient part of a legacy given by the creditor to the debtor, to pay a debt due from him to the creditor's estate, is rather a right to pay out of the fund in hand than a right of set-off. Such a right of payment, therefore, can only arise where there is a right to receive the debt so to be paid; and the legacy or fund, so to be applied in payment of the debt, must be payable by the person entitled to receive the debt." *LaFoy* v. *LaFoy*, 43 N. J. Eq. 206.

The ground upon which an administrator is entitled to retain so much of the distributive share of a distributee as will satisfy a debt due from the latter to the estate is, that the heir or distributee makes a demand upon the administrator in respect to assets in his hands as administrator, and the just and equitable answer in such a case is that the person making the demand has already in his hands assets belonging to the estate in excess of the amount of the distributive share which he is demanding. *Jeffs* v. *Wood*, 2 P.Wms. 129; *Courtenay* v. *Williams*, 3 Hare, 539 (552); *Ramsour* v. *Thompson*, 65 N. C. 628; Woerner Law of Administration, section 564.

Thus, in Waterman on Set-Off, section 210, it is said: "The right of the executor or administrator to retain in such cases depends upon the principle that the legatee or distrib-

utee ' is not entitled to his legacy or distributive share, while he retains in his own hands a part of the fund out of which that and other legacies or distributive shares ought to be paid.'" And, in *Ranking* v. *Barnard*, 5 Madd. Ch. 28, the court said, in substance, that it was clear the executor had the right to satisfy the legacy by applying the funds in his hands, and that this right existed against an assignee of the legatee as well as against the legatee himself.

It is contended, however, that the right to retain the amount of a debt due from a distributee to the estate, out of his distributive share only obtains in case the fund to be distributed arises out of the personal estate, and that it does not apply when real estate has been sold and the fund for distribution is derived from that source.

We can perceive no reason for such a distinction. Of course, where the administrator of an estate holds a claim, as such, against one of the heirs or distributees, he is entitled to avail himself of all the rights and remedies ordinarily available to any other person under like circumstances ; no greater and no less.

If the administrator is driven to pursue the ordinary remedy to collect a debt due the estate from an heir, he stands like any other creditor, and is put to a race of diligence with others ; but if in the proper course of administration, funds which constitute assets of the estate come into his hands by operation of law, which he holds as administrator, in the distribution of which an heir or legatee asserts a right to participate, it is always a sufficient answer that the claimant has already in his hands more than his share of the assets of the estate.

A proceeding by an administrator to acquire priority in respect to real estate which has descended to the heir, so as to charge upon it a debt due the estate, is one thing, while a proceeding by an heir or his grantee to compel the administrator to pay money which he holds in the capacity of ad-

ministrator, is quite another, in case the heir has already received all he is entitled to out of the estate.

The distinction is clearly drawn in *LaFoy* v. *LaFoy, supra*. In that case a bill was filed for partition of real estate among certain devisees. An attempt was made to charge the share of one of the devisees with the amount of a debt due from him to the estate of the testator. In an opinion holding that this could not be done, the court says : " The devisee of lands occupies no such relation to the executor as that which exists between legatee and executor. No act is necessary, on the part of the executor, to put the devisee in full enjoyment of the estate devised. The opportunity, therefore, could not arise for the executor to retain the debt of the devisee to the testator out of any demand which the devisee might seek to enforce against the executor." It was very properly held that inasmuch as the executor could only acquire a lien upon the land devised, by becoming an actor, and instituting proceedings appropriate to that end, the debt could not be so charged in a partition proceeding. *Campbell* v. *Martin*, 87 Ind. 577, is distinguishable from the present case upon the same principle.

In *Smith* v. *Kearney*, 2 Barb. Ch. 533, it was held that the fund which the executor sought to retain did not come to his hands in the character of executor, but merely as an accident, and that the right of set-off did not obtain ; for that reason there is nothing in that case opposed to our conclusion in the present case.

Any reasoning which fails to appreciate the distinction between an attempt to enforce a lien or charge upon the real estate which has descended to an heir by an independent proceeding, and an attempt by an heir who is indebted to the estate, or by his assignee or mortgagee, to compel the payment to him of a distributive share which has come into the hands of the administrator by operation of law, must necessarily lead to a conclusion that is " wide of the mark."

As has been seen, the present is a case where real estate

has been sold, in the regular process of administration, for the purpose of making assets with which to pay claims against the estate. Now, if the heir, or his assignee, or a purchaser from him, were here claiming a distributive share of the personal assets of an estate, and at the same time retaining, by an indebtedness, a much larger part of the assets than the amount of his claim, there could be no question of the administrator's right to withhold the distributive share and apply it on the debt due the estate.

Can it make any difference that the assets arose from the sale of real estate, especially in a case where it appears that the assignee or mortgagee knew of the indebtedness when he acquired his lien upon or interest in the land? In the recent case of *Koons* v. *Mellett, post,* p. 585, it was held, after full and careful consideration, that one who had obtained a judgment against a devisee of real estate, which was afterwards sold in pursuance of the terms of the will, acquired no better right to participate in the proceeds than the devisee himself had, and that the administrator, with the will annexed, had the same right to set off a debt due from the devisee to the estate as if the latter himself were claiming to participate in the fund. *Manifold's Estate,* 5 Watts & Serg. 340; *Springer's Appeal,* 29 Pa. St. 208; *Strong* v. *Bass,* 35 Pa. St. 333; *Nickerson* v. *Chase,* 122 Mass. 296; *Askew* v. *Douglass,* 3 Atl. R. 263; *Snyder* v. *Warbasse,* 11 N. J. Eq. 463; *Smith* v. *Smith,* 13 N. J. Eq. 164. The principle which ruled the cases cited is decisive of our judgment in the present case.

While it is quite true, as is contended, that upon the death of the ancestor the title to real estate descends to and vests in the heir, the fact must be kept in view that unlike the rule at common law the heir, according to the terms and policy of the statutes in this State, does not take an absolute title. Pending the settlement of the estate of his ancestor, the descent is subject to be intercepted and the title divested whenever the personal representatives make it appear that

the sale of the land is necessary to make assets for the payment of the ancestor's debts. The statute not only gives the administrator the right, but makes it his duty, when the personal property is not sufficient, to convert the real estate into assets for the payment of debts. Where this right is asserted, and the lands are sold and conveyed, the title to the land which descended to the heir is completely divested. And although the heir may have sold and conveyed the land, the conveyance made by an administrator under the order of the court is not in anywise affected or impaired by the previous encumbrance or conveyance by the heir. This conclusion logically results from the fact that under the statutes of our State the real and personal property of an intestate descend to the same persons and in the same proportions, and both are equally chargeable with the payment of his debts, with the exception that the personal estate must be exhausted first. *Nelson* v. *Murfee*, 69 Ala. 598.

At the common law the title to real property vested absolutely in the heirs upon the death of the ancestor, and was not subject to be made assets for the payment of debts. Under the statute in force here it is as completely subject to the debts of the intestate as is the personal estate ; and even though the administrator waste the personal estate a purchaser of the real estate from an heir is not protected. *Nettleton* v. *Dixon*, 2 Ind. 446.

It is not in the power of a third person to impair, or embarrass the personal representative in the settlement of an estate by dealing with the heirs, upon the supposition that their interest is of a certain or fixed character. Nor can the other heirs be deprived of some portion of their estate by the intervention or intermeddling of a stranger, so as to destroy the equality of descent and distribution.

The right of heirs to participate equally in the estate of their ancestor is superior to that of a lien-holder with notice. *Foltz* v. *Wert*, 103 Ind. 404 (411) ; *McCandless' Appeal*, 98 Pa. St. 489.

It frequently happens that the assets of an estate consist largely of debts due from the heirs to the ancestor. If it were possible for an heir, immediately upon the death of his ancestor, to convey or encumber his interest in the real estate, so that after paying the debts of the ancestor, his grantee or mortgagee might participate in the surplus equally with other heirs who had received, or who owed the ancestor nothing, the most manifest injustice and inequality would result. The law always presumes that an ancestor meant that his heirs should share equally in his estate. *Ruch* v. *Biery,* 110 Ind. 444 (449).

As was pertinently said in effect in *Weakley* v. *Conradt,* 56 Ind. 430, a purchaser acquires precisely the right and interest which the heir has from whom he takes a conveyance; nothing more nor less. *Duvall* v. *Speed,* 1 Md. Ch. 229; *Baker* v. *Griffitt,* 83 Ind. 411.

Until the estate is finally settled he is bound to know that the sale of real estate may become necessary in order to make assets for the payment of debts, and he is bound to know that when the land is converted into money, by operation of law it becomes money assets in the hands of the administrator, and that it is subject to all the incidents of other assets, regardless of the source from which they arise.

For certain purposes the administration and distribution money thus acquired may be treated as having the qualities, and as the representative, of the real estate, but it is nevertheless money which has come into the hands of the administrator by operation of law in the course of administering the estate.

Any procedure which the heir or his grantee or assignee may institute to get it out of the administrator's hands, brings into operation and makes available to the latter any right of set-off, or to retain it as against any legitimate debt owing by the heir to the estate, through whom he claims as assignee. *Johnson* v. *Hoyle,* 3 Head, 56.

The claim of the assignee is not a claim to an interest in

land, but it is a claim to an interest in the assets of the estate ; whatever interest he has is an interest *in* the estate, and he takes that interest precisely as his assignor held it.

The doctrine of *Ball* v. *Green,* 90 Ind. 75, is opposed in some respects to the conclusions reached in *Koons* v. *Mellett, supra,* and in the foregoing opinion, and to that extent must be deemed modified.

The judgment is reversed, with costs, with directions to the court below to proceed in consonance with this opinion.

Filed Jan. 29, 1890.

## Dissenting Opinion.

Olds, J.—I can not concur in the majority opinion of the court in this case.

William Fiscus died intestate, owning real estate situate in the counties of Decatur and Ripley. Marion Fiscus, son of William, was indebted to his father, at the time of his death, in the sum of $1,610.17. The administrator of the father's estate brought suit and recovered a judgment against the son, in the Decatur Circuit Court. Before the filing of a transcript in the clerk's office of Ripley county, and obtaining a lien on the real estate in that county Marion Fiscus, the son, executed to the appellee, Moore, a mortgage on the real estate which descended to the son, in Ripley county, to secure a valid debt to Moore for $75, and the mortgage lien attached to such real estate, and became a prior lien to the judgment lien in favor of the estate. After the execution of the mortgage the administrator filed a transcript of the judgment in the clerk's office of Ripley county, and obtained a lien upon the land. After the liens had attached the administrator sold all of the real estate under an order of court for the sale of the real estate of the decedent for the payment of debts. After the payment of the debts there remained a surplus in the hands of the administrator for distribution between the heirs, and of such surplus Marion, the son, was entitled to $357. The contest in this case is as

to whether Moore shall have so much of said sum applied to the liquidation of his debt as will satisfy it, or whether the administrator, as against Moore, has the right to apply all of such distributive share in satisfaction of the judgment in favor of said estate. It is held by a majority of the court that the administrator has the right to offset the judgment held against the son to the amount due him derived from the sale of the real estate on which Moore held a mortgage; or, in other words, to apply the surplus in his hands, derived from such sale, to the payment of the judgment. This I deny, and assert that such holding is contrary to the weight of authority.

It is a recognized doctrine that so far as the distributive share due to the heir is derived from personal property, it may be set off or applied in payment, or rather retained by the administrator in payment of a debt due from the heir, but an entirely different rule applies as to the surplus which may come into the hands of the administrator by reason of the sale of real estate for the payment of debts, and well there should be a different rule applied. The personal property is assets in the hands of the administrator, it is made his duty by law to convert the personal property into money and to collect the debts due the estate, as well those due from heirs as those due from other persons. The administrator is the lawful custodian of the personal property, and he may maintain an action for its recovery. The heir has no claim to the personal property, no lien could attach to it and the heir could in no way legally encumber any interest in it. All the interest the heir has in or claim to the personal property is his distributive share in the surplus remaining after the payment of the debts of the ancestor and the costs of administration. But it is different in regard to the real estate; as to that the title vests in the heir at the date of the death of the ancestor, subject to be divested only upon one contingency, viz., for the payment of the debts of the ancestor, and the administrator is entitled to an order to

sell only so much of the real estate of the decedent as may be necessary to pay the debts and liabilities of the estate. Section 2346, R. S. 1881.

The law does not contemplate any distribution of the proceeds of real estate, and it is only in case the real estate can not be separated so as to sell only a sufficient amount to pay the debts and leave the portion belonging to the heirs unsold, making it a necessity that the whole must be sold, that any funds arising from the sale of real estate in excess of the amount necessary to pay the debts comes into the hands of the administrator. If there is sufficient personal property to pay the debts and costs of administration, then the administrator can not sell the real estate, and the only way he can collect a debt against the heir is by the same process by which he collects debts due from other persons, and 'his only remedy against the land in that event is by judgment, execution and sale, and the lien would attach at the date of the rendition of the judgment, as would the lien of any other creditor, and the land would be applied to the payment of the liens in the order in which they attached.

It is so well settled that I need not cite authorities to support the propositions that the title vests in the heir at the date of the death of the ancestor, and that the lien of the judgment against the heir attaches to such interest which descends to the heir, and that the same is true where an interest is devised instead of passing by inheritance; and that the land so taken by descent, or devise, is subject to sale on execution; also, that in case of a sale of such real estate for the payment of the debts of the ancestor, or testator, any surplus remaining is subject to the lien, and the judgment or mortgage creditor can recover it as against the heir or devisee; that is to say, in equity the converted estate retains its original character. Lest these propositions be controverted, I cite a few of the decisions of this court in support of the propositions I have stated: *Milligan* v. *Poole*, 35 Ind. 64; *Spray* v. *Rodman*, 43 Ind. 225; *Wilson* v. *Rudd*, 19 Ind.

101 ; *Gimbel* v. *Stolte,* 59 Ind. 446 ; *Ballenger* v. *Drook,* 101 Ind. 172; *Simonds* v. *Harris,* 92 Ind. 505.

If the debt due the ancestor was on account of an advancement to the heir, or if the heir was simply entitled to a legacy, to be paid to him by the executor, then equity might interfere and compel an application of the legacy to the payment of the debt ; but where the debt due from the heir is an ordinary debt, the administrator, or executor, has no more right, or claim, or lien upon the land which descends to the heir, or is devised to the devisee, than has any other creditor of the heir or devisee.

If the ancestor or testator desired the real estate to be charged with the payment of the debt, he could charge the land devised with the payment of the debt, and make it a prior lien to that of any of the other creditors of the devisee. If the testator has not done so, or the real estate descends to the heir, then the real estate is subject alike to the payment of the debt of the ancestor and the other creditors of the heir.

In the case of *LaFoy* v. *LaFoy,* 43 N. J. Eq. 206, it is held that the debt of a devisee to the testator is not a charge on lands devised to him by the testator, in the absence of language in the will making such debt a charge. The court in that case, after stating the doctrine which permits the executor to withhold the payment of a legacy until the satisfaction of the debt due the testator, says : " The devisee of lands occupies no such relation to the executor as that which exists between legatee and executor. No act is necessary, on the part of the executor, to put the devisee in full enjoyment of the estate devised. The opportunity, therefore, could not arise for the executor to retain the debt of the devisee to the estate out of any demand which the devisee might seek to enforce against the executor. If such a charge attaches against the land devised, it would be necessary for the executor to establish it by proceedings in which he is the actor. After diligent search, I have been unable to find a case in

which an attempt has been made to charge a devise of lands with a debt due from the devisee to the testator, in the absence of language in the will manifesting the purpose of the testator to do so." The court, in conclusion, says: " In the absence of language in the testator's will to that effect, there is no authority for charging the devisee's debt upon land devised to him."

If any right exists to have the proceeds of the land which descends to the heir or is devised to the devisee, applied to the payment of a debt due the ancestor or testator in preference to other creditors, then the administrator has the right to have the estate charged with it, and a lien declared paramount to any other lien in favor of other creditors, whether the land be sold for the payment of debts of the ancestor or testator or not.

The right to set off a legacy or a distributive share of the assets arising from personal estate against the debt due from the heir or legatee is denominated the doctrine of equitable retainer.

In the case of *Smith* v. *Kearney*, 2 Barb. Ch. 533, the court held that the principle of equitable retainer does not apply to a fund arising from the sale of real estate which descended to the debtor as one of the heirs at law of the testator, which real estate has been converted into personalty by accident or because the valid portions of the will could not be carried into effect in any other way than by a sale of the land, and that the proceeds of real estate thus converted into personalty are still to be considered as real estate, and as in no way connected with the funds which come to the hands of the executor for the purposes of the will. And I contend that the same is true in case of an administration. The administrator has no business with any portion of the real estate which descends to the heir; it comes to him by reason of the fact that he can sell but a sufficient amount to pay debts, and is compelled, in order to execute his trust, to sell more, and when thus sold the portion or the

surplus above what is required to pay the debts retains its character as real estate, and if applied by order of the court to pay debts, it must be applied to the payment of the same in the order which it would be if it were real estate, the prior encumbrances being first ordered satisfied.   It must necessarily retain its character as real estate.   It is not distributed in like manner as personal assets ; the administrator can not mix the two and distribute them ; if he did the widow would take one-third, but she has no interest in such surplus ; it goes back to the person in whom the title was vested before the sale.

In the case of *Sartor* v. *Beaty,* 25 S. C. 293, it was held that the doctrine of equitable retainer did not apply to the interest of the distributee in the real estate of an intestate, or to the proceeds of the sale thereof.

In *Procter* v. *Newhall,* 17 Mass. 81, considering this same question, the court says :  " The other objection would be fatal to the title of the tenant, if it were true that Joseph Hathorne had but a defeasible estate, as has been suggested. For the tenant has no greater or better estate than Joseph Hathorne had at the time of the attachment.   But we are of the opinion that his estate was no more subject to the debt formerly due to the intestate, than it was to any other debt. In the division of real estate among heirs, no deduction can be made from the share of any one of them, on account of any debt due from him to the estate.   This can only be done in cases of advancement."

In the case of *Mann* v. *Mann,* 12 Heisk. (Tenn.) 245, it was held that the son's indebtedness to the father's estate is not a lien on the son's share of his father's realty, and that such share in the realty is subject to a race of diligence between the personal representatives of the father and other creditors of the son.

In 2 American Law of Administration, by Woerner, section 564, in speaking of the equitable doctrine of retainer, it is said :  " If the lands have been sold and there is

a residue of the proceeds for distribution, it has been held, both that the administrator may retain to the extent of the debt due by the distributee, and, on the other hand, that, since in equity the converted estate retains its original character, the equitable doctrine of retainer does not extend to the proceeds of real estate." In support of the doctrine that it may be retained, the author cites but one case, and that is *Nelson* v. *Murfee*, 69 Ala. 598, in which it was held that as against the heir the executor could retain the amount, but in that case the court says: "Whether, when the heir is insolvent and owes the estate of the ancestor, as in this case, the administrator has any prior right to demand payment out of lands descended, or whether it becomes a mere race of diligence between him and other creditors of the heir, is a question not raised by this record." And by a diligent search for authorities, this is the only case that I have been able to find, where the question has been considered, that any court has even intimated that the doctrine applies in such a case as we have under consideration.  See *Hancock* v. *Hubbard*, 19 Pick. 167; *Towles* v. *Towles*, 1 Head, 601.

In Pennsylvania it was held that the indebtedness was an advancement, and could be retained. *Springer's Appeal*, 29 Pa. St. 208.  In *Strong* v. *Bass*, 35 Pa. St. 333, it was held, as we have hereinbefore stated, that the doctrine applied in case of legacies, and I do not question that the doctrine does apply in case of legacies or advancements, and the authorities cited in support of the decision in the case of *Koons* v. *Mellett*, *post*, p. 585, go no further than to hold that the doctrine applies in cases of distributive shares of personal property, legacies, and where the debt is an advancement.

In exact accord with the unanimous holding of the courts of other States, this court has twice decided this question adversely to the majority opinion, and in accordance with what I believe to be the settled law in the case of *Campbell*

v. *Martin,* 87 Ind. 577.   Campbell, the appellant, recovered
a judgment against Alexander C. Martin, in the Washington
Circuit Court, on January 14th, 1876; on June 1st, 1876,
Mason L. Martin, father of Alexander C. Martin, died tes-
tate, owning land in said Washington county, which he de-
vised to his said son Alexander C.; James H. Martin was
appointed administrator of the father's estate, with the will
annexed; Alexander C. was indebted to the father, and at the
August term, 1878, of the Washington Circuit Court, the ad-
ministrator recovered a judgment on said indebtedness to the
estate; at the April term, 1879, the court ordered the admin-
istrator to retain and hold the real estate so devised to Alex-
ander, giving him credit for its appraised value on the
judgment against him in favor of the administrator.

The proceedings in the court below were undoubtedly ir-
regular, but this court in deciding the case expresses its views
in regard to these judgment liens and says : "There is some
reason for the application of this doctrine to the payment of
legacies by the executor, and especially so when the indebt-
edness of the legatee to the estate might be regarded as a
total or partial ademption of the legacy.   But we know of
no reason whatever for the extension of this doctrine, and
making it applicable to devises of real estate.   As a general
rule, legacies are payable by the executor out of the testa-
tor's personal estate which may come to his hands to be ad-
ministered.   But, ordinarily, the executor has absolutely
nothing to do with the real estate devised by his testator,
unless it may be needed for the payment of the testator's
debts. Otherwise, the devise of the real estate will take effect
at once upon the death of the testator, without any inter-
vening act of the executor.   Upon the facts stated in the
complaint, in the case at bar, we are of opinion that the lien
of the appellant's judgment upon the real estate devised to
Alexander C. Martin was not and could not be divested nor
postponed to the lien of the junior judgment against him in
favor of the administrator."

The case of *Ball* v. *Green*, 90 Ind. 75, is a case involving exactly the same principle as the one under consideration, and it was held by a unanimous court that the mortgagee was entitled to the surplus. In that case the court well says: "No authority is cited to support this position, and we know of none. Nor do we believe it can be maintained on principle. The administrator had authority to sell this land to pay the decedent's debts, but no power to sell in order to collect a claim from the owner. After the payment of the decedent's debts, the residue of the money, if any, will belong to Jesse Adams, and its retention by the administrator will not make the estate the debtor of Adams, nor will it make the administrator such debtor except at the option of Adams. In addition to this, the appellee has a lien upon the money that is superior to any claim of the administrator, if indeed he has any, and which was not impaired or affected by the accidental circumstances, that he had the custody of the money, and that Adams was indebted to him and to the estate. As against the appellee, in our opinion, he could not retain the money for the purpose of collecting from Adams claims due the estate. As to these, he occupied no better position than any other creditor, and as the appellee had acquired a specific lien, his claim must prevail." These two decisions have long since settled the doctrine in this State in accordance with the weight of authority, and they ought, in my opinion, to be adhered to.

BERKSHIRE, J., concurs with OLDS, J.

Filed Jan. 29, 1890.