GLOBE MERCANTILE CO. *v.* PERKEYPILE ET AL.

[No. 23,679.   Filed November 20, 1920.   Rehearing denied January 14, 1920.]

1. EXECUTORS AND ADMINISTRATORS.—*Sale of Intestate Wife's Realty.—Mortgage Debt.*—Since the husband's undivided one-third interest of his deceased wife's realty, which descended to him upon her death by virtue of §3016 Burns 1914, Acts 1891 p. 71, was subject to a purchase-money mortgage executed by her, and in which he had joined, the court, on petition of the administrator of her estate, had authority to order the whole of the realty sold to pay the mortgage debt.   p. 38.

2. EXECUTORS AND ADMINISTRATORS.—*Debts.—Sale of Realty.*— Under. the statute the real estate of an intestate is as completely subject to his debts as his personalty. p. 38.

3. EXECUTORS AND ADMINISTRATORS.—*Wasting of Personalty.—Liability of Realty.*—The wasting of the personal assets of the decedent's estate by the executor or administrator does not relieve the real estate from liability for the debts. p. 38.

4. EXECUTORS AND ADMINISTRATORS.—*Sale of Realty.—Misapplication of Proceeds.—Effect on Purchaser.*—The malfeasance of an administrator in misapplying the proceeds from the sale of realty cannot be charged against the purchaser. p. 40.

5. DESCENT AND DISTRIBUTION.—*Real Estate.—Purchase from Heir. —Subject to Debts.*—A purchaser of realty from an heir is bound to know that, until the estate is finally settled, the realty is subject to sale for the payment of the debts of the ancestor, and in the event of such a sale the purchaser's title may wholly fail. p. 40.

6. DESCENT AND DISTRIBUTION.—*Heir's Judgment Creditor.—Rights. —*A judgment creditor of an heir has no greater rights than the heir. p. 40.

7. EXECUTORS AND ADMINISTRATORS.—*Sale of Realty.—Devise.*— Where a testator has devised realty, charging it with the payment of his debts, his personal representative, if the personalty is insufficient, may obtain an order to sell the lands, the devise being no obstacle. p. 40.

8. DESCENT AND DISTRIBUTION.—*Realty.—Debts.*—The devisee or heir of real estate takes the same subject to the indebtedness of the deceased. pp. 40, 42.

9. DESCENT AND DISTRIBUTION.—*Husband and Wife.—Wife's Realty.—Rights of Surviving Husband's Creditors.*—Where a deceased wife's realty, in which the surviving husband had an undivided one-third interest by virtue of §3016 Burns 1914, Acts 1891 p. 71, was sold to pay a purchase-money mortgage to which the husband was a party, a judgment creditor of the husband had a lien on no greater interest than that of the husband, and hence such creditor's lien could affect only the balance of the husband's interest after payment of the mortgage. p. 42.

10. DESCENT AND DISTRIBUTION.—*Sale of Realty to Pay Debts.— Effect on Judgment Against Heir.*—An administrator's sale to pay the debts of the ancestor, when properly petitioned for and regularly conducted, destroys the lien on the land of any judgment against the heir. p. 43.

11. EXECUTORS AND ADMINISTRATORS.—*Sale of Realty to Pay Debts. —Parties.*—Section 2854 Burns 1914, §2338 R. S. 1881, defining the

requisites of a petition to sell real estate for the payment of the decedent's debts, does not require. the holder of a judgment against an heir or a devisee to be made a party to such a proceeding, though, under §2860 Burns 1914, §2343 R. S. 1881, any person not a party thereto may, upon proper petition, be admitted as a party for the purpose of having his interest heard and determined.  p. 43.

12. EXECUTORS AND ADMINISTRATORS.—*Petition to Sell Realty.— Sufficiency.*—A petition by an administrator to sell real estate to pay the decedent's debts which substantially complies with §2854 Burns 1914, §2338 R. S. 1881, is sufficient.  p. 43.

13. DEEDS.—*Breach of Warranty.—Failure of Grantor to Pay Drainage Assessments.*—Where the grantee accepted a warranty deed for realty subject to all taxes and assessments falling due after a certain date, and thereafter, to discharge a lien thereon for drainage improvements, paid an assessment, part of which fell due prior to such date, such grantee, in an action for breach of the warranty against the grantors, was entitled to recover judgment for the part falling due prior to the date agreed upon.  p. 44.

From Jay Circuit Court; *Jacob F. Denny,* Judge.

Action by the Globe Mercantile Company against Perry D. Perkeypile and another.  From a judgment for defendants, the plaintiff appeals.  (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.)  *Reversed.*

*James R. Fleming* and *Malcolm V. Skinner,* for appellant.

*S. A. D. Whipple & Son,* for appellees.

WILLOUGHBY, J.—This was an action by appellant against appellees for damages for breach of the covenants of warranty in a deed to certain real estate. The complaint was in one paragraph in the usual form.  The appellees filed an answer in four paragraphs.  The first is a general denial.  The second admits the execution of the deed set out in appellant's complaint for the consideration named, and

then alleges in detail the source of their title to the real estate described therein, which is the same as is found in more general terms in the special finding of facts hereinafter set out. The third is a partial answer, pleading payment of certain of the alleged liens in question. The fourth is also a partial answer, alleging that appellant, as part of the consideration for said real estate, retained from the purchase price thereof the amount of certain liens in question, and agreed to pay them.

Appellant filed a demurrer to the second paragraph of appellees' answer for want of facts, which was overruled. It then filed a reply in general denial to all paragraphs thereof except the first. The issues thus formed were submitted for trial, and upon request of the parties the court made a special finding of facts, and stated its conclusion of law thereon.

The finding of facts is as follows: The defendants, Perry D. Perkeypile and Estella Perkeypile, on April 30, 1912, conveyed by warranty deed to plaintiff, the Globe Mercantile Company, the real estate described in plaintiff's complaint, consisting of 120 acres of land in Knox township, Jay county, Indiana. That the plaintiff paid the defendants therefor the sum of $90 per acre, and plaintiff took said lands, subject to a mortgage in the sum of $3,200, with accrued interest thereon, and also subject to all taxes and assessments falling due after May, 1912. That plaintiff about June 1, 1913, paid to William S. Helm the sum of $166 in full satisfaction of a judgment rendered against one Jeremiah Williams on September 16, 1904, in favor of said Helm, and recorded on said date in judgment docket No. 11, at page 49, in the office of the clerk of the circuit court of Jay county, Indiana,

in the sum of $364.56.   That plaintiff also paid to William S. Hervet and John Clark on June 13, 1913, the sum of $87 for the release of a judgment rendered against Jeremiah Williams on August 20, 1906, in favor of said Hervet and Clark in the sum of $122.64, which was duly entered of record on said date in judgment docket No. 11, at page 50, in the office of the clerk of the circuit court of Jay county, Indiana. That plaintiff also incurred certain expenses in the amount of $48 in compromising and discharging said judgments, and also in securing the release of two judgments against the said Jeremiah Williams in favor of the Cory-Leamon Company and John D. Rathvon, both of which were duly recorded in judgment docket No. 11, in the office of the clerk of the Jay Circuit Court, and which were rendered and recorded prior to November 25, 1908.   That plaintiff also expended the sum of $75.34 in paying assessments duly adjudged against said lands in the Hamilton Heller drainage proceedings in the Jay Circuit Court of Jay county, Indiana, the amount of $20.58 of which fell due prior to June 1, 1912.   That Jeremiah Williams and Scarber Williams were married more than thirty years ago, and lived together as husband and wife until Scarber Williams died intestate on the ―― day of August, 1906, the owner in fee simple of the 120 acres of real estate in question, and leaving surviving her, her husband, Jeremiah Williams, and several children.   That on November 20, 1905, the said Scarber Williams purchased said lands of William C. Horn, and executed a mortgage, her said husband joining therein, upon said lands to secure notes in the sum of $4,940 given as part of the purchase price of said lands.   That after the death of Scarber

Williams, intestate, in August, 1906, and on January 3, 1908, Albert Brunson was duly appointed as administrator of her estate, and duly qualified and acted as such administrator; that said decedent not having any personal estate, said administrator on January 6, 1908, filed his petition to sell said real estate to pay the balance due upon said mortgage notes and other indebtedness of said decedent, all of which indebtedness was incurred subsequently to her said marriage, and averred in said petition that said real estate was of the value of $8,000. That Jeremiah Williams was made a party defendant to said petition and filed his answer consenting to said sale. That William S. Helm, William C. Hervet, John W. Clark, the Cory-Leamon Company and John D. Rathvon, judgment creditors of Jeremiah Williams, as aforesaid, nor any of them, were made parties to said petition, nor did summons or other notice issue to them; that said parties, or any of them, did not have any notice or knowledge of said proceedings to sell said real estate, nor did they or any of them, appear in person or by attorney in said proceedings, or in the subsequent proceedings leading up to the final settlement of said estate and the discharge of said administrator. That said administrator was ordered to sell all of said lands, including the interest of Jeremiah Williams therein, and that the same be sold free from all liens except the taxes for 1908. That pursuant to said order said administrator sold said land for the sum of $6,938, to the defendants, Perry D. Perkeypile and Estella Perkeypile, on November 25, 1908, and said defendants having complied with the terms of the sale, said administrator duly executed and delivered a deed to said defendants for said real estate.

That said administrator received from the sale of said real estate the sum of $6,937, and the amount of $55.97 as interest on deferred payments, which he distributed as follows: To the State Bank of Pennville in payment of purchase-money mortgage assigned to said bank by W. C. Horn, $4,951.52; to appraisers of real estate, $1; funeral expenses, $125.01; taxes, $136.68; costs, $27.29; E. E. McGriff, attorney fees, $125; to Frank Williams, $500; to clerk on Frank Williams' claim, $384.65; services of administrator, $125; to Jeremiah Williams, $200; to clerk for Jeremiah Williams, $415.82. Total $6,991.97. And that thereafter, on March 12, 1908, the final report of said administrator was finally approved and he was finally discharged.

From which facts the court concludes as follows: (1) That the judgments of record existing against Jeremiah Williams on November 25, 1908, in favor of William S. Helm, William C. Hervet and John Clark, the Cory-Leamon Company, and John D. Rathvon, at the time said real estate was conveyed to said defendants by said administrator, were not valid liens against said real estate or any part thereof, and were not valid liens against said real estate or any part thereof on April 30, 1912, when said real estate was conveyed by said defendants to plaintiff. (2) That plaintiff take nothing by his complaint that defendants recover of and from the plaintiff their costs in this action paid, laid out and expended.

On the conclusion of law the court rendered judgment that the plaintiff take nothing by its suit, and that defendants recover their costs of plaintiff. From this judgment appellant appealed and has assigned as error that the court erred in overruling its demur-

rer to appellees' second paragraph of answer, and in stating each of its conclusions of law. The errors assigned present the questions: Were the judgments mentioned in the special finding of facts liens on any portion of the real estate in question? And if they were liens, were such liens divested by the sale of said real estate to pay the debts of the decedent?

Section 3016 Burns 1914, Acts 1891 p. 71, provides that if a wife dies testate or intestate, leaving a widower, one-third of her real estate shall de-

1. scend to him, subject, however, to its proportion of the debts of the wife, contracted before marriage. Scarber Williams died intestate, the owner of the real estate in question. On the happening of that event her husband, Jeremiah Williams, by virtue of said statute, became seized immediately of an undivided one-third part thereof. But his interest was subject to the mortgage executed thereon by his wife to secure a portion of the purchase money thereof, and in the execution of which he had joined. By reason of that fact the court had authority to order the whole of the real estate sold for the purpose of paying the mortgage indebtedness. *Hampton* v. *Murphy* (1909), 45 Ind. App. 513, 86 N. E. 436, 88 N. E. 876; *Williams* v. *Wood* (1915), 60 Ind. App. 69, 107 N. E. 683.

As a general rule, land upon the death of an ancestor passes to the heirs or devisees, who are immediately vested with the title thereto and the right

2. of possession; and they are entitled to the full enjoyment of such land, and at common law the title to real property vested absolutely in the

3. heirs upon the death of the ancestor, and was not subject to be made assets for the payment

of debts; but by the force of the statute in this state, the real estate of an intestate is as completely subject to his debts as is his personal estate, and even though the personal estate is wasted by the administrator, the purchaser of the real estate from an heir is not protected. In one case it is said: "The statute not only gives the administrator the right, but makes it his duty, when the personal property is not sufficient, to convert the real estate into assets for the payment of debts. Where this right is asserted, and the lands are sold and conveyed, the title to land which descended to the heir is completely divested. And although the heir may have sold and conveyed the land, the conveyance made by an administrator under the order of the court is not in anywise affected or impaired by the previous incumbrance or conveyance by the heir. This conclusion logically results from the fact that under the statutes of our state the real and personal property of an intestate descends to the same persons and in the same proportions, and both are equally chargeable with the payment of his debts, with the exception that the personal estate must be exhausted first." *Fiscus, Admr.*, v. *Moore* (1890), 121 Ind. 547, 23 N. E. 362, 7 L. R. A. 235. The wasting of the personal assets of the decedent by his executor or administrator does not relieve the real estate from liability for the debts. If, however, such wasting is a wrongful one by the administrator, he would perhaps be liable on his bond. But if the assets are wasted or destroyed without fault of the executor or administrator, or by reason of a decrease in the value of such assets, or the insolvency of the administrator or executor and their sureties, the loss falls on the estate. Henry, Probate Law §188; *Nettleton, Admr.*,

v. *Dixon* (1850), 2 Ind. 446; *Fiscus, Admr.,* v. *Moore,* . *supra.*

If the administrator makes a misapplication of the proceeds of the sale of the real estate, this malfeasance cannot be charged against the purchaser.

4.    11 R. C. L. §418.

It is not within the power of a third person to impair or embarrass the personal representatives of a decedent in the settlement of the estate by

5.    dealings with the heirs upon the supposition that their interest is of a certain or fixed character.  A purchaser from an heir acquires precisely the same right and interest which the heir has from whom he takes a conveyance and nothing more.  He is bound to know that, until the estate is finally settled, the sale of the real estate may become necessary for the payment of debts.  Such purchaser takes the property subject to the debts of the ancestor and, by reason of a sale by the administrator, his title may wholly fail.  Henry, Probate Law §189.

A judgment creditor of an heir has no greater rights than the heir, and if the title of the heir is divested by the sale of the real estate to pay ·

6.    debts; the rights of the judgment creditor are also divested.  Where a testator has devised real estate, charging it with the payment of his

7.    debts, his personal representatives, if the personal estate be insufficient, may obtain an order to sell the lands, the devise being no obstacle whatever.  *Bennett* v. *Gaddis, Admr.* (1881), 79 Ind. 347.

In *Koons, Admr.,* v. *Mellett* (1890), 121 Ind. 585, 23 N. E. 95, 7 L. R. A. 231, it is held that a judgment , obtained against a devisee of real estate which

8.    is afterward sold by the administrator, with the will annexed, in pursuance of the terms of the

will, the transcript having been properly filed, becomes a lien on the land, and follows the proceeds of the sale of such land into the administrator's hands, binding it to the same extent that it bound the land, but such lien is a general lien, and is subject to all the equities existing in favor of the estate represented by the administrator, and confers on the judgment creditor no greater rights as against such estate than those possessed by the devisee. In *Fiscus, Admr.,* v. *Moore, supra,* 552, the court says: "While it is quite true, as is contended, that upon the death of the ancestor the title to real estate descends to and vests in the heir, the fact must be kept in view that unlike any rule at common law the heir, according to the terms and policy of the statutes in this state, does not take an absolute title. Pending the settlement of the estate of his ancestor, the descent is subject to be intercepted and the title divested whenever the personal representatives make it appear that the sale of the land is necessary to make assets for the payment of the ancestor's debts. The statute not only gives the administrator the right, but makes it his duty, when the personal property is not sufficient, to convert the real estate into assets for the payment of debts. Where this right is asserted, and the lands are sold and conveyed, the title to the land which descended to the heir is completely divested." In *Weaver* v. *Gray* (1905), 37 Ind. App. 35, 76 N. E. 795, it was decided that where the deceased childless wife received, as a gift from her father, lands, one-third thereof descends to the husband and two-thirds to such father, subject to the payment of her debts; and such husband, father, or her executor or administrator may maintain a suit for partition thereof. The

court in that case says that the conclusion in nowise conflicts with the rule declared in *Herbert* v. *Rupertus* (1903), 31 Ind. App. 553, 68 N. E. 598. In that case it was held that one-third of the fund derived from the sale of a deceased wife's real estate, which under the statute descended to the surviving husband, was subject to the payment of a mortgage indebtedness upon the real estate in which he joined and by the mortgage promised to pay. The mortgage· was a lien upon the real estate, and the lien followed and attached to the fund in the hands of the administrator.

The devisee or heir of real estate takes the same subject to the indebtedness of the deceased. *Baker* v. *Griffitt* (1882), 83 Ind. 411; *Moncrief, Exr.,* v. *Moncrief* (1881), 73 Ind. 587; *Weakley* v. *Conradt* (1877), 56 Ind. 430; *Moore* v. *Moore* (1900), 155 Ind. 261, 57 N. E. 242.

The land involved was sold for the payment of the purchase-money mortgage. The husband had no interest in this as against .said purchase-money mortgage, and it follows that his judgment creditor could have a lien on no greater interest than he had, nor right to collect his debt out of any interest except the interest of the husband. This interest was only the right to the balance of the fund after the payment of the purchase-money mortgage. *Shirk* v. *Thomas* (1889), 121 Ind. 147, 22 N. E. 976, 16 Am. St. 381; *Butler* v. *Thornburg* (1892), 131 Ind. 237, 30 N. E. 1073; *Vandevender* v. *Moore* (1896), 146 Ind. 44, 44 N. E. 3; *Butler* v. *Thornburgh* (1895), 141 Ind. 152, 40 N. E. 514; *Sarver* v. *Clarkson* (1900), 156 Ind. 316, 59 N. E. 933; *Denton* v. *Arnold* (1898), 151 Ind. 188, 51 N. E. 240; *Overturf* v. *Martin* (1907), 170 Ind. 308, 84 N. E. 531.

A sale by an administrator of the real property of an intestate to pay his indebtedness deprives the heirs of their estate in the premises, since their rights are inferior to the demands of the creditors. As the right of an heir to a share of his ancestor's real property is extinguished by an administrator's sale of the premises to pay the indebtedness of the decedent, so, too, such sale, when properly petitioned for and regularly conducted, must necessarily destroy the lien upon such land of any judgment rendered against the heir. *Nichols* v. *Lee* (1891), 16 Colo. 147, 26 Pac. 157. In the case of *Nichols* v. *Lee, supra,* the court says that: "Though, under the Colorado statutes, the surviving husband inherits half of the estate of his wife, he takes it subject to the payment of her debts, and where the estate is insolvent the purchaser of land belonging thereto under an execution against the husband acquires no title as against a creditor of the wife who purchases at the administrator's sale."

The purchaser of such land under execution against the husband is not a necessary party to proceedings to sell the land for the payment of the wife's debts. There is nothing in the statute (§2854 Burns 1914, §2338 R. S. 1881), defining the requisites of a petition to sell real estate for the payment of decedent's debts, which requires the holder of a judgment against the heir or devisee of real estate to be made a party to such proceeding. Another section of statute (§2860 Burns 1914, §2343 R. S. 1881) provides that: "Any person not a party to such petition may, upon proper petition, be admitted as a party to the proceedings and set up any interest in or lien upon the land and

have the same heard and determined.'' A petition
by an administrator to sell real estate to pay his dece-
dent's debts which substantially complies with §2854
Burns 1914, *supra,* is sufficient. *Hampton* v. *Murphy,*
*supra.* In the instant case it was not necessary to
make persons having judgments against the surviving
husband, Jeremiah Williams, parties to the proceed-
ings to sell the real estate, and they were not entitled
to any notice of such proceedings. It is not contended
that the proceedings were irregular, or that the law
pertaining to the sale of real estate by administrators
was not fully complied with.

Our conclusion is that the judgments named in the
special finding of facts in this case were not liens on
the real estate conveyed by appellees to the appellant
at the time of such conveyance, and that the payment
of such judgments by appellant was a voluntary pay-
ment, and that appellant has no right of action against
appellees for the recovery of the amounts so paid. It
follows from what we have said that the court did
not err in overruling appellant's demurrer to the sec-
ond paragraph of the answer of appellees and in stat-
ing its first conclusion of law.

It appears from the finding of facts that the appel-
lant took his conveyance of the real estate subject to
all taxes and assessments falling due after
13. May, 1912, and that the appellant expended the
sum of $75.34 in paying assessments duly ad-
judged against said real estate in the Hamilton-Heller
drainage proceedings in the Jay Circuit Court, of
which $20.58 fell due prior to June 1, 1912. This
drainage assessment was a lien on the real estate con-
veyed by appellees to appellant, and, by the terms
of the warranty of appellees, the appellant is entitled

to recover from appellees the sum of $20.58, being that amount of said assessments which fell due prior to June 1, 1912.

The court, therefore, erred in stating its second conclusion of law. The judgment is reversed, with instructions to the trial court to restate its second conclusion of law in appellant's favor as to said amount of $20.58 paid on that portion of the Hamilton-Heller drainage assessment which fell due prior to June 1, 1912, with interest on said amount from the date of payment, and to render judgment thereon in conformity therewith.