(157 App. Div. 387.)

### SIEBERT v. DUNN.

(Supreme Court, Appellate Division, Second Department. June 6, 1913.)

1. SET-OFF AND COUNTERCLAIM (§ 50*)—ASSIGNED CONTRACT—SEPARABLE PAYMENTS.

A corporation contracted to sell defendant whatever vitrified brick he should require for the construction of a sewer for the city of New York, payments to be made on the 15th day of the month succeeding the engineer's certificate for work done. It was expected that the performance of the work would take some years. The brick were delivered in lots as needed as the work progressed, until the corporation, by reason of insolvency and defendant's alleged failure to pay for brick delivered, refused to deliver more, but prior to such refusal assigned a claim for brick delivered and unpaid for to plaintiff's assignor. *Held*, that the contract was not entire, but a severable one, and as such assignable so far as the brick delivered were concerned; and hence, in an action by the assignee to recover payment for lots so delivered, defendant was not entitled to counterclaim for damages by reason of the corporation's refusal to complete the contract under Code Civ. Proc. § 502, providing that, if an action is founded on contract which has been assigned, a demand arising after the assignment cannot be made the subject of a counterclaim.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent Dig. § 76; Dec. Dig. § 50.*]

2. CORPORATIONS (§ 657*)—FOREIGN CORPORATION—DOING BUSINESS WITHIN STATE—LICENSE TAX—ASSESSMENT.

Where a foreign corporation was authorized to do business in the state of New York in March, 1900, and began business within two months thereafter, the fact that it failed to pay the license fee required by Laws 1901, c. 558, § 181, which took effect April 26, 1901, was no objection to the validity of a contract made by it in 1900, in the absence of evidence that the tax had been assessed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536–2541, 2550, 2552–2554; Dec. Dig. § 657.*]

3. INTEREST (§ 39*)—ACCOUNT.

Where a corporation contracted to sell defendant all the vitrified brick required for the construction of a sewer, which was expected to require considerable time, and the contract specified that payments were to be made about the 15th of each month after the issuance of certificates by the supervising engineer, the amount due at the time of each certification drew interest from that date.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 83–89; Dec. Dig. § 39.*]

Appeal from Trial Term, Kings County.

Action by John S. Siebert against Bart Dunn. From a judgment for plaintiff, and from an order resettling an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frederick Hulse, of New York City (Martin A. Schenck, of New York City, on the brief), for appellant.

George W. Field, of New York City (Frank H. Platt and Paul Moore, both of New York City, on the brief), for respondent.

THOMAS, J. [1] The jury has found that the Eastern Paving Brick Company, the original assignor, broke its contract to sell the defendant whatever vitrified brick he should require for building a sewer for the city of New York, and the court dismissed the counterclaim and directed a verdict for plaintiff for the balance due on bricks delivered to defendant under the contract. The question is whether, in this action by the assignee of the amount unpaid, the defendant can interpose the defense that the assignor broke the contract, and counterclaim for damages for such breach.

It is necessary to notice the dates severally of the first assignment, the breach, and when the debt fell due. In July and November, 1900, the company delivered brick, the price whereof, after allowance for defective brick, was $7,171.50, or, less 10 per cent. reserved payment, $6,454.35, whereon the defendant paid, including freight bills, $3,724.-20, leaving a balance of $2,730.15. But such amount was not payable until the 15th day of the month succeeding the engineer's certificate of the bricks laid, which was August 15, 1902, and interest to the amount of $1,365.08 has been allowed from August 15, 1902, the due date, to December 16, 1910, the time of the verdict. The company assigned the claim to its president on June 20, 1901, and the latter assigned to plaintiff. A receiver of the company was appointed in May, 1902. As early as March, 1902, the company asserted a balance due of $761.90, and in May the manager under the receiver indicated his opinion that the company would not resume work. On July 7, 1902, the defendant by letter asked when further shipment could be made. The manager in reply referred to his letter of March 24th and in effect declined to make shipments until "you have paid in full for what you should pay under the contract." Thereupon the defendant visited the plaintiff's plant and found that it was not manned or operated, and again the manager asserted that the defendant was indebted.

The breach of the contract by plaintiff, if any there was, relates to the month of May or July. But the jury has found a breach which could not be earlier than May nor later than July. It is quite certain that the company and receiver were mistaken in the amount demanded in March; but plaintiff asserts that $375.22 was due May 15th and $1,333.37 on June 15th, while defendant considers that against a balance on July 7, 1902 (when plaintiff's letter was dated), of $102.57 should be debited $375 for defective brick. This is only of present importance as it shows the date of the breach. All the bricks were delivered in 1900, and defendant owed a sum for them; but it was payable to the extent of 90 per cent. on the 15th day of the month after the engineer had certified to the amount.

The defendant urges that there was no debt assigned until the certificate of measurement, and that the breach then existed. There was a debt, but the amount was ascertained through the certificate, and the

date of payment was fixed thereby on the 15th day of the month following the certificate. As a claim was assigned unpaid at a time when it was subject to no defense or counterclaim, the usual rule is that the assignee continued to hold it immune from such defense or counterclaim. Code of Civil Procedure, § 502. A similar policy is enforced by section 41 of the Personal Property Law (Consol. Laws 1909, c. 41), formerly section 1909 of the Code of Civil Procedure, under which, in Michigan Savings Bank v. Millar, 110 App. Div. 670, 96 N. Y. Supp. 568, it was decided that against an assigned account the defendant could not counterclaim a note made by the assignor, not due at the time of the assignment, and that even a claim acquired before notice of the assignment, but not then due, could not be offset, for which authority was found in Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456.

But the appellant denies the application of this well-known rule. His contention is that the brick company undertaking was entire, in the sense that it agreed to furnish and the defendant agreed to buy "all the vitrified brick which the party of the first part [Dunn] may require in the performance of the work under his contract," for which the defendant agreed "to pay in cash about the 15th of each month 90 per cent. * * * of the monthly estimate or certificate showing the quantity of brick laid during the preceding month given by the city authorities or engineer." Hence it is urged that the company broke its contract in 1902, and that it cannot recover for the brick delivered in 1900, for which payment was due in 1902. In other words, as the action was brought by the plaintiff after breach of the contract by the company, such failure to perform is a defense, and the damages flowing therefrom a counterclaim. The bricks were deliverable in lots in the course of a work that required a number of years for completion, and for deliveries payment was due upon a date following certification. If the defendant did not pay accordingly, the company had a cause of action; and it would not be necessary for the company to plead or to prove performance on its part of the entire contract, but rather to show such part performance as entitled it to the money claimed. The company performed by delivering the brick, but the payment awaited certificate of quantities used. But as to the brick delivered in 1900 there was complete performance, save as to imperfect brick, and the claim therefor was assignable, and the assignee took free from any defense that might arise by reason of some subsequent happening. If the company had retained the claim, the defendant could have interposed a counterclaim for its breach, for the reason that it had such a claim before the action was begun. But the claim was severable, and as such assignable; so the assignee took with the protection that comes from the assignment of an independent cause of action. Assume that payment for the brick were due upon delivery. Thereupon a debt arose. If at that time there had been no default, the obligation to pay was perfect, and it would not become imperfect by some future default on the part of the company, arising before suit was brought, although a counterclaim therefor could be interposed by the defendant. Nor would it be different if the payment for the brick de-

livered were not due until certification. As to such brick, the company would have performed, and when it sued it would not be bound to plead and prove that there had been no default prior to the action brought. So when the company assigned the account, the assignee took a title that did not become infirm by any subsequent default, and by the law relating to assignments the counterclaim that would have been available against the first assignor was not so against the assignee. In other words, the promise to pay for the brick delivered in 1900 was not conditional upon entire performance by the vendor. Clark v. West, 137 App. Div. 23, 122 N. Y. Supp. 380.

[2] It is objected that the company had not paid the license tax provided by chapter 558, § 181, Laws of 1901, going into effect April 26, 1901. The defendant, a foreign corporation, was authorized to do business here in March, 1900, and began such business within two months thereafter. There is evidence that the license fee had not been paid; but there is no evidence that the tax had been assessed, and so the objection fails. Halsey v. Henry Jewett Dramatic Co., 190 N. Y. 231, 83 N. E. 25, 123 Am. St. Rep. 546.

[3] The account drew interest. The number of brick was certified each month, and the price was fixed. Computation alone was necessary. Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101; Cutter v. Gudebrod Brothers Co., 190 N. Y. 252, 83 N. E. 16.

The judgment and order should be affirmed, with costs. All concur.