NATIONAL NASSAU BANK OF NEW YORK v. I. M. LUDINGTON'S
SONS, Inc. (No. 6285.)

(Supreme Court, Appellate Division, First Department. November 20, 1914.)

1. Set-Off and Counterclaim (§ 50*)—Payment under Contract—Assignment—Breach of Contract—Damages.

A subcontractor for canal work being unable to complete his contract, it was agreed with the contractor that the subcontract be canceled as of a specified date, and the subcontractor's plant and personal property be retained until the subcontract work was completed. Part of this plant consisted of steel forms rented by the subcontractor, the rent for which, the settlement contract provided, should be paid by the subcontractor until the work was completed. Final payment of $5,000 due the subcontractor was retained to secure the contractor against any liens which might be filed against the subcontractor, and to secure any claim against the work made by the state; the whole balance to be adjusted within a year from the date of settlement. *Held* that, the subcontractor having assigned its rights to such final payment to plaintiff bank before the settlement had been fully complied with, and, having failed to pay rent for the forms, their use was lost to the contractor and damage sustained by the contractor by reason thereof, such loss was available to the con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tractor as a counterclaim, when sued by plaintiff to recover the balance of the payment so assigned, though the damage was subsequent to the assignment to plaintiff and notice thereof to the contractor.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 113; Dec. Dig. § 50.*]

2. DAMAGES (§ 62*)—AMOUNT—DUTY TO MINIMIZE.

Where a settlement between a contractor and subcontractor provided that the latter should pay rent for certain leased forms in use on the work until completed, and by reason of the subcontractor's breach of such agreement the lessor took the forms by replevin, to the contractor's serious damage, it was the contractor's duty to retain possession by itself paying the rent, if by so doing the loss would have been minimized.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. § 62.*]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by the National Nassau Bank of New York against I. M. Ludington's Sons, Incorporated. From a judgment for plaintiff on a directed verdict, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Clarence W. McKay, of Rochester, for appellant.
Edward Herrmann, of New York City, for respondent.

DOWLING, J. The defendant, hereinafter referred to as the contractor, had a contract with the state of New York for the improvement of a portion of the Erie Canal, under contract No. 62, and sublet a portion of said work on September 28, 1910, to Gabriel Bros. Construction Company, hereinafter called the subcontractor. The subcontractor, being unable to complete its agreement with the contractor, on August 2, 1912, entered into an agreement in writing with it by which, among other things, it was agreed that the contract between them should be terminated and canceled as of July 1, 1912; that the subcontractor transferred and conveyed to the contractor the plant and personal property set forth in the schedule thereunto attached, together with all right and interest to the retained percentage still held by the contractor and all claims against the state for delays caused in the carrying out of said contract. Included in said schedule was the following provision:

"* * * All steel forms upon the site of the contract to be used by the contractor until the contract or work is completed. (The rent for the same to be paid by subcontractor.)"

The subcontractor and the contractor mutually released each other from all claims and demands of every kind. The contractor agreed to pay the subcontractor $45,000 in the manner provided by said agreement, $16,119.87 being paid in cash on the execution thereof. After certain other payments were provided for, a balance remained of $20,000, payable as follows: $15,000 in three promissory notes of $5,000 each, with interest, due May 20, 1913, and the remainder of $5,000 to be paid in cash as soon as the contractor was satisfied that there were no liens against the subcontractor which remained unpaid or could be

filed, and that the state had no claim against the contractor for the failure of the subcontractor to comply with the contract and specifications on the work already performed.   Then followed this paragraph:

"Sixth. The subcontractor agrees that if any liens are filed against the subcontract he will forthwith discharge the same either by payment thereof or by giving a bond as provided by statute and that he will settle and adjust any claim that may be made by the state against the contractor for failure of the subcontractor in the proper performance of the work already completed. The said sum of $5,000 balance above mentioned shall be retained by the contractor as security for this agreement, and in case of the failure of the subcontractor to comply with the same within a reasonable time the contractor is authorized to adjust said claims for said balance, the whole balance, however, to be paid and adjusted within one year from the date hereof."

Thereafter, on October 9, 1912, the subcontractor assigned to the plaintiff all its right to the said sum of $5,000 retained under the agreement in question, and on October 17th the plaintiff notified the defendant of such assignment and furnished a copy thereof to the defendant. In such notification plaintiff claimed that said sum of $5,000 was then due and payable and requested payment thereof forthwith.   On March 4, 1913, the subcontractor having failed and neglected to pay the rent of the steel forms in question, the owner thereof brought an action in replevin in the New York Supreme Court against both the subcontractor and the contractor, as the result of which said forms were taken from defendant's possession, solely because of the failure of the subcontractor to pay the rent therefor.   The defendant was compelled to remove the steel forms from the site of the work by reason of a direction from the sheriff of Orleans county, pursuant to his duty in said replevin action, and in order to complete the work under the said contract was obliged to build new wooden forms for the concrete construction and to install them on the line of the operation, at a total cost, including delay and expenses, of over $5,000 and in excess of the plaintiff's claim.   The maximum period of one year within which the said $5,000 was to be payable to the subcontractor expired August 2, 1913, and this action was commenced December 8, 1913.   From a judgment entered upon a verdict of a jury by direction of the court in plaintiff's favor for the full amount claimed (the direction of a verdict in favor of defendant having been refused), the present appeal is taken.

[1]   The respondent insists that the appellant cannot set up any claim for damages against it, for the reason that the claim in question was assigned to the respondent and notice thereof given to appellant prior to the time when the alleged offset, counterclaim, or recoupment arose, and as authority for this proposition relies on Michigan Savings Bank v. Millar, 110 App. Div. 670, 96 N. Y. Supp. 568, affirmed 186 N. Y. 608, 79 N. E. 1111, and Siebert v. Dunn, 157 App. Div. 387, 142 N. Y. Supp. 253.   I do not believe that either of these cases is applicable to the case at bar.   In the first case cited the claim there sought to be pleaded as an offset or counterclaim did not arise out of the contract upon which the action was brought, but was an independent and entirely separate cause of action in favor of defendant against the plaintiff's assignor.   In that case, as well, there had been complete performance of the contract by the assignor.   In the second case cited, there had likewise been a complete performance by the assignor at the time of the

assignment, and, the contract being a severable and not an entire one, it was held that, inasmuch as there had been a complete performance as to the merchandise sold when the assignment was made, the defendant could not set up a breach of the remaining portion of the contract to make other deliveries of similar materials.

In the case at bar there had been no complete performance of defendant's agreement by the subcontractor when the assignment of this fund was made to the plaintiff. The agreement, of which the plaintiff had notice, gave no right to enforce or demand payment of the $5,000 balance until the contractor had satisfied himself of the nonexistence of liens and of any claim upon the part of the state. In no event could the contractor be required to pay said sum, or any part thereof, until the full period of one year from the date of said contract had expired. Any earlier payment would be a voluntary act on his part. Admitting that the said $5,000 was held as a fund to insure the contractor against the two contingencies therein provided against—the filing of liens and the making of claims by the state (for I do not think the words "as security for this agreement" apply to more than those two specified eventualities)—still it cannot be said that there ever was such performance upon the part of the subcontractor as brought this case within the decision heretofore referred to until long after the assignment to the plaintiff had been made. The test applied in the cases seems uniformly to be whether or not the assignor has performed his contract fully when he makes the assignment of his rights to recover the moneys payable thereunder. If the contract is so performed, then the assignee takes subject to no defense or counterclaim subsequently accruing against the assignor. If he has not so performed, then the assignee takes subject to such counterclaim as may be properly set up against the assignor, arising out of the same contract or transaction. See Code Civ. Proc. §§ 501 and 502.

We think, therefore, that the right to set up any damages sustained by a breach of the contract between them was not limited to such damages as the contractor sustained by the happening of either of the two specific contingencies as a protection against which this fund was held, but as well to any breach by the subcontractor of his agreement of August 2, 1912, with the contractor. The failure to furnish the use of these steel forms to the contractor was an undoubted breach by the subcontractor of that agreement. But here we are met with the impossibility of determining upon this record what the damage was which the contractor sustained by reason of such breach. Ordinarily it would be the rent which it was required to pay in order to secure to itself the contracted right to use these steel forms. The record does not show for what period the unpaid rent was due which formed the basis of the replevin action. There is nothing to show that the defendant could not have secured the right to continue to retain and use these steel forms in its work by continuing to pay the rent stipulated by the subcontractor.

[2] If the defendant could have continued the use of the forms by paying the stipulated rent, it was its duty to have done so, rather than incur the expense of removing them and substituting others. If, on the other hand, the defendant for some undisclosed reason could not

possibly have secured from the owners the right to continue to use the forms, then its damage would be the sum it was required to pay to remove the same and install the substitutes therefor, with the incidental loss due to delay in the completion of the contract. Under these conditions, and in this state of the record, we are unable to direct a final judgment.

The judgment appealed from will therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur.

SCOTT, J. (dissenting). I agree with Mr. Justice DOWLING that the $5,000 held under the contract between the subcontractor and defendant was so held specifically as a fund to insure the contracts against the two contingencies specially provided for by the assignment, neither of which contingencies has happened. Consequently that deposit should be ignored in this discussion, and the case considered as if no such reservation had been made.

What we should have, then, would be the simple case of the assignment to plaintiff of an amount still remaining unpaid by the defendant to Gabriel Bros., plaintiff's assignor, and the attempt to set up against the collection of this amount by the assignee a claim against Gabriel Bros., the assignor, not existing at the time of the assignment to plaintiff. This, as it seems to me, brings the case squarely outside sections 502 and 1909 of the Code of Civil Procedure. By section 502, in a case like the present, a demand existing at the time of the assignment, and belonging to the defendant in good faith *before notice of the assignment* must be allowed as a counterclaim; and by section 1909 an assigned demand may be enforced "subject to any defense or counterclaim existing   *   *   *   *before notice of the transfer,* or against the transferee."

In each case the test as to whether or not a cross-demand may be asserted against the assignee of a claim is whether or not the cross-demand existed at the time of the transfer, or of notice thereof. In the present case the assignment to plaintiff was made on October 9, 1912, and notice thereof given to defendant on October 17, 1912. At that time the claim now sought to be interposed as a counterclaim had not arisen, and it did not arise for months afterwards. It is true that the assigned claim did not become collectible until after the claim which it is sought to interpose as a counterclaim had arisen. This was not, however, because the $5,000 was not owed by defendant, but because its payment was deferred for reasons having no relation to this controversy. That I think makes no difference. The test prescribed by the Code is not when the assigned claim is collectible, but when the assignment was made and notice thereof given. By that test the counterclaim cannot be allowed. Michigan Savings Bank v. Millar, 110 App. Div. 670, 96 N. Y. Supp. 568, affirmed 186 N. Y. 608, 79 N. E. 1111; Siebert v. Dunn, 157 App. Div. 387, 142 N. Y. Supp. 253.

In my opinion, the judgment should be affirmed, with costs.