UNITED STATES TRUST COMPANY OF PATERSON, NEW JERSEY, Plaintiff, *v.* JACOB MENDELSON and Others, Defendants.

First Department, June 6, 1924.

**Contracts — action by assignee to recover on factoring agreement amount due thereunder — setoff arising on independent agreement between factors and assignor not due at time of assignment cannot be used as counterclaim.**

In an action against factors by the assignee of claims arising under the factoring agreement to recover the amount thereof, the factors cannot interpose as a counterclaim or setoff the amount due them under an independent agreement relating to sales of goods from the factors to the assignor, where at the time of the assignment, of which the factors were given notice, there was nothing due to them under the independent agreement.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Porter & Taylor* [*F. Carroll Taylor* of counsel; *Thomas D. Osbourne* with him on the brief], for the plaintiff.

*Sapinsky & Amster* [*Simon M. Sapinsky* of counsel; *Joseph Sapinsky* with him on the brief], for the defendants.

MARTIN, J.:

The plaintiff seeks to recover the sum of $5,932.85 alleged to be due from defendants to the Rush Silk Manufacturing Company and by that company assigned to the plaintiff, to secure the payment of loans. The account arose out of a factoring agreement. Defendants made two payments on it to plaintiff. There is no dispute with reference to the amount of the account, but the defendants assert that they are entitled to offset, against it, certain unpaid trade acceptances which they hold against the Rush Silk Manufacturing Company, and which were given in payment for silk sold by the defendants to that company upon an independent

contract, asserting that because of such offset, they have already overpaid the plaintiff on the factoring account to the extent of $1,189.25. Defendants say they are entitled to judgment dismissing the plaintiff's claim, affirmative judgment in their favor for $1,189.25, with interest from the 21st day of April, 1920, and, in the event that the court shall allow plaintiff's claim, that there should be deducted therefrom the sum of $1,181.54, representing the value of merchandise shipped by defendants to the Rush Silk Manufacturing Company on February 24, 1920.

During the year 1917 defendants made a contract with the Rush Silk Manufacturing Company, by which they were to sell the output of its mill. This contract was modified in 1918. As modified, it provided for the delivery of the entire output of the mill to the defendants, and the assignment to them of all accounts for the sale of such output. The defendants on their part undertook to assist in selling the merchandise, to make advances thereon, and to guarantee payment of all approved accounts. They were to receive a percentage of the receipts, retaining a lien on the merchandise for all advances and for losses and damages arising from their dealings with the Rush Silk Manufacturing Company. About the fifteenth day of each month the defendants were to pay the silk company all accounts for merchandise delivered during the preceding month to customers whose accounts were assigned to and guaranteed by the defendants. The amount was to be ascertained by deducting " returns, allowances, discounts, commissions, interests, advances, setoffs, expenses, charges and disbursements, etc., provided for by this agreement."

In 1918 another and distinct course of dealing between the Rush Silk Manufacturing Company and defendants was entered into, when the factoring account was modified. These dealings related to the sale of raw silks to the silk company. The contracts for such sales provide for terms of " net ninety days trade acceptances." It is the amount of unpaid trade acceptances, given under such independent contracts of sale, that the defendants desire to offset against the amount due under the factoring agreement.

On February 28, 1920, the Rush Silk Manufacturing Company assigned to the plaintiff, as security for loans existing and to be made, the sum of $41,963.10, due it from the defendants. The silk company at that time owed the plaintiff the sum of $20,000, and there was subsequently advanced during the year 1920, additional amounts as follows: March first, $10,000; March twelfth, $10,000; March sixteenth, $10,000; March twenty-second, $10,000; April third, $3,500. On March 1, 1920, the plaintiff

notified the defendants of the assignment, and on March 2, 1920, receipt of this notice was acknowledged. Further correspondence passed between the parties in the early part of March concerning the assignment, during which period the plaintiff sent a copy of it to the defendants, erroneously giving the amount assigned as $41,000, and in reply received a letter from the defendants which read in part as follows: " The Rush Silk Mfg. Co. account with us is subject to variation depending upon possible returns, claims and adjustments in connection with sales made by Rush Silk Mfg. Co."

The condition of the account under the factoring agreement existing between the defendants and the Rush Silk Manufacturing Company on February 28, 1920, the date of the assignment, and during the months of March and April, is agreed upon and shown in a statement of account made by defendants on April 30, 1920.

Exhibit I shows that on February 1, 1920, the defendants owed the Rush Silk Manufacturing Company $41,963.10 on the factoring contract, with no credits claimed against this until February 28, 1920, when credits of $1,509.60 and $15.10 were claimed for merchandise returned, so that at the time of the assignment to plaintiff on February 28, 1920, the amount due on this account was the amount set out in the assignment, less certain charges entered on defendants' books on the same day.

During March and April, 1920, a credit of $5.55 for trucking was asserted by the defendants against this account, and $34,500 cash payments were made by defendants to plaintiff as the assignee of the account, as follows: March sixteenth, $10,000; March nineteenth, $10,000; March twenty-fifth, $5,000; April first, $5,000; April eighth, $2,500 and April twenty-first, $2,000.

The total of such credits was $36,030.25, leaving the sum of $5,932.85 due on the factoring agreement, being the amount now claimed by the plaintiff.

The account rendered by the defendants on April 30, 1920, ignoring interest and discount, sets forth the sums then due on the factoring contract; and those figures are not questioned.

The condition of the account for the sales of silk, made by defendants to the Rush Silk Manufacturing Company, was on February 28, 1920, the date of the assignment, that two trade acceptances were outstanding; but they were not due until April 27, 1920, and May 25, 1920. The first of these was paid, but the second was not.

After the date of the assignment, other trade acceptances were given by the Rush Silk Manufacturing Company to the defendants

48

on account of silk delivered under the sales contracts. They were not paid. The total of the unpaid trade acceptances was $8,625.63, and it is this amount which, according to defendants, should have been set off against the assigned account. defendants asserting that they have already overpaid the plaintiff to the extent of $1,189.25. This amount defendants seek to have returned.

The two contracts were separate and distinct. The contract by which the defendants were to market the product of the Rush Silk Manufacturing Company mills had been in force for several years before 1918. By its terms the defendants were to retain certain sums and pay the remainder to the Rush Silk Manufacturing Company.

The contract by which the defendants sold the Rush Silk Manufacturing Company raw material was an independent contract, and by its terms payment was to be made by ninety-day trade acceptances.

It was the amount due the silk company under one of the contracts that was assigned to plaintiff. If the deduction sought to be made against the assignee arose from a breach by the assignor of that contract, it might be that the amount affected by the assignment would be reduced by the amount of damages caused, by that breach, to defendants. But the deduction here asserted against the assignee is based upon the assignor's failure to carry out, after the assignment had been made, an independent contract. There was no such offset or counterclaim in existence when the assignment was made.

In *National Nassau Bank* v. *Ludington's Sons, Inc.* (164 App. Div. 466) this court said (at p. 468): " The respondent insists that the appellant cannot set up any claim for damages against it for the reason that the claim in question was assigned to the respondent and notice thereof given to appellant prior to the time when the alleged offset counterclaim or recoupment arose, and as authority for this proposition relies on *Michigan Savings Bank* v. *Millar* (110 App. Div. 670; affd., 186 N. Y. 606) and *Siebert* v. *Dunn* (157 App. Div. 387). I do not believe that either of these cases is applicable to the case at bar. In the first case cited the claim there sought to be pleaded as an offset or counterclaim did not arise out of the contract upon which the action was brought but was an independent and entirely separate cause of action in favor of defendant against the plaintiff's assignor. In that case, as well, there had been complete performance of the contract by the assignor. In the second case cited, there had likewise been a complete performance by the assignor at the time of the assignment, and the contract being a severable and not an entire

one, it was held that inasmuch as there had been a complete performance as to the merchandise sold when the assignment was made, the defendant could not set up a breach of the remaining portion of the contract to make other deliveries of similar materials. In the case at bar there had been no complete performance of defendant's agreement by the sub-contractor when the assignment of this fund was made to the plaintiff. The agreement, of which the plaintiff had notice, gave no right to enforce or demand payment of the $5,000 balance until the contractor had satisfied himself of the non-existence of liens and of any claim upon the part of the State. In no event could the contractor be required to pay said sum or any part thereof until the full period of one year from the date of said contract had expired. Any earlier payment would be a voluntary act on his part. Admitting that the said $5,000 was held as a fund to insure the contractor against the two contingencies therein provided against — the filing of liens and the making of claims by the State (for I do not think the words ' as security for this agreement ' apply to more than those two specified eventualities) — still it cannot be said that there ever was such performance upon the part of the sub-contractor as brought this case within the decision heretofore referred to until long after the assignment to the plaintiff had been made. The test applied in the cases seems uniformly to be whether or not the assignor has performed his contract fully when he makes the assignment of his rights to recover the moneys payable thereunder."

When the plaintiff accepted the assignment, it was not chargeable with notice that, under other independent contracts, amounts might become due to the defendants and remain unpaid. The amounts due under the contract to which the assignment related depended upon a variety of circumstances including performance of the entire contract, the effect of which might be to reduce what would otherwise go to the assignee. The assignments to plaintiff would be subject to a valid offset or counterclaim depending upon the circumstances out of which it might arise.

The defendants may not, however, assert against plaintiff this claim arising out of an independent contract and thus defeat the assignment. It was for value, and it was made and notice of it given to defendants before the silk company became liable for any sum whatever under the other, independent contract.

The plaintiff is entitled to judgment as prayed for, with costs.

CLARKE, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment directed in favor of plaintiff, with costs. Settle order on notice.