(Decided 20th June, 1890.)

---

CHRISTIAN DEVRIES, Trustee *vs.* WILLIAM J. HISS, *et al.*

*Will—Trust—Partition—Legal and Equitable estate under a Will—Defaulting trustee—Trustee for the Benefit of Creditors—Estoppel—Recitals in a Deed—Taxes, and Interest on Mortgage—Costs.*

By the will of H. the rest and residue of his estate was given to trustees, their heirs and successors, in trust for the purposes, first, that one equal sixth part should "go to and become the property of" his son, P. H. H. absolutely and forever; and, *secondly* that the other five-sixths should be held by the trustees for the benefit of certain *cestuis que trust.* The trustees were authorized and empowered "in case they shall be of the opinion at any time that it is necessary for the purpose of making a division among those entitled, or if it shall be necessary for any other purpose, or in case they shall deem it advantageous to the parties interested in the same," to sell the whole or any part of the testator's estate, and to convey the same. The whole of the residuum after the payment of legacies consisted of real estate.

Devries, Trustee *vs.* Hiss, *et al.*

P. H. H. was one of the trustees under the will, and as such collected the rents and income, and some of the securities belonging to the estate. He afterwards failed in business after having used a portion of the trust funds. He executed a deed of trust conveying all his property to C. D. for the benefit of his creditors. He was subsequently removed from the position of trustee and a new trustee was substituted in his place. On a bill filed by the trustees under the will, and by others for a partition of the estate of H. to which C. D. the trustee of P. H. H. was made one of the defendants, and by which it was also prayed that the amount of trust funds retained by P. H. H. should be treated as a payment in part of his share of the trust estate, it was HELD:

1st. That C. D. stood in precisely the same position towards the estate of H. that P. H. H. would have occupied had the deed of trust not been executed.

2nd. That the amount of the defalcation of P. H. H. must be treated as a payment to himself of that much of his interest.

3rd. That the estate which the trustees under the will of H. took, was a legal estate in fee as to the whole residuum, and not a mere power, and the trusts as to the one-sixth share of P. H. H. did not terminate until his share was ascertained by a partition in kind, or by sale and division of the proceeds.

4th. That P. H. H. did not take a legal estate in one-sixth of the residuum immediately upon the death of his father, but an equitable one which would become or ripen into a legal estate only upon the cessation of the trusts as to it, that is, upon the partition of the entire residuum.

5th. That this equitable interest was liable to be intercepted by a Court of equity to make good his defalcation, and C. D. took a conveyance of his interest subject to this equity, and could not claim more than his grantor would have been entitled to receive.

6th. That the trustees under the will of H. were not estopped from making the claim set up by them in the bill, by the fact that they had described themselves as *unsecured creditors* of P. H. H. in an agreement made for a collateral purpose between C. D. as trustee of P. H. H. and the unsecured creditors, and signed by said trustees as such.

A recital in a deed is conclusive of the facts stated, only in an action of which the deed itself is the foundation or defence.

Where the trustee of an undivided interest in an estate, advances money out of the trust funds in his hands to pay taxes on the whole estate, or the interest on a mortgage thereof, he is entitled to have the same refunded by the estate for which such payment was made.

A trustee ought not to be made to pay the costs of taking and recording the testimony relating to a claim successfully asserted by him.

APPEAL from the Circuit Court of Baltimore City.

By a *pro forma* decree passed on the 5th of April, 1890, by Judge WRIGHT, it was directed that a partition be made among the devisees under the will of Philip Hiss, in accordance with their respective interests thereunder, of all the real estate in the City of Baltimore undisposed of, whereof the said Philip Hiss died seized and possessed, and also all the balance of the proceeds of real estate in the hands of the trustees, to be ascertained by the auditor's account, directed by the decree to be stated, and that for that purpose all the real estate undisposed of should be valued, rating the same at its present value, and upon such valuation the whole should be partitioned. It was further decreed that the balance of $8,729.33 of the trust estate received by P. Hanson Hiss, and not accounted for by him, should be treated as a receipt by and payment to the said P. Hanson Hiss, on account of or as a part of his share under the will of the said Philip Hiss, and that Christian Devries, trustee, should receive under the deed of trust only so much of the share of the said P. Hanson Hiss of the whole estate, real and personal of said testator, as might be over and above the amount so unaccounted for by the said P. Hanson Hiss of said trust funds. The decree then directed a commission to be issued for the purpose of making partition as therein directed, and it disallowed the claim of Christian Devries for the amount paid by him for taxes

and interest on account of the trust estate of Philip Hiss, out of the estate in the hands of said Devries, under the deed of trust to him from P. Hanson Hiss. And it further decreed that the costs of taking testimony and the recording of it, be paid by the said Christian Devries, trustee.

From this decree this appeal was taken. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*Charles Marshall*, for the appellant.

*M. R. Walter*, and *S. Teackle Wallis*, for the appellees.

MCSHERRY, J., delivered the opinion of the Court.

By the will of Philip Hiss, sundry pecuniary legacies, aggregating eleven thousand dollars, were bequeathed, and their payment was charged upon his real estate. All the rest, residue, and remainder of his property was given to five named trustees, and their heirs and successors in trust, for the following purposes, viz., first, that one equal sixth part should "go to and become the property of" P. Hanson Hiss, absolutely and forever; and secondly, that the other five-sixths should be held by the trustees for the benefit of the several *cestuis que trust* named in the second, third, fourth, fifth and sixth items of the fourth article of the will. These *cestuis que trust* are the four other children of Philip Hiss and two children of a deceased child. By the sixth article of the will the trustees were authorized and empowered, in case they "shall be of the opinion at any time that it is necessary, for the purpose of making a division among those entitled, or if it shall be necessary for any other purpose, or in case they shall deem it advantageous to

the parties interested in the same,'' to sell the whole or
any part of the testator's estate; and by the ninth arti-
cle they were authorized to convey any land sold by them
under the aforegoing provisions.    The personal property
proving insufficient, a portion of the real estate was sold
by the trustees, and the legacies were paid out of the
proceeds.    The whole of the residuum now consists of
fee simple real estate.

P. Hanson Hiss was one of the trustees and executors
under the will of his father, Philip Hiss.    As trustee he
collected the rents and income and some of the securities
belonging to the estate, and when he failed in business
he had used $9,985.44 of these trust funds so received
by him.    On the 6th day of November, 1886, he executed
a deed of trust, conveying all his property to Christian
Devries for the benefit of creditors.    He was subsequently
removed from the position of trustee, and his letters as
executor were revoked.    A new trustee was substituted
in his place.    This bill was then filed by the trustees
under the will of Philip Hiss, and by others, against all
parties interested in Philip Hiss' estate, for a partition
thereof.    Mr. Devries, the trustee of P. Hanson Hiss,
was made one of the defendants.    In addition to the
relief sought by way of partition, the bill prayed that
the amount of trust funds retained by P. Hanson Hiss
be treated as a payment in part of his share of the trust
estate.    Mr. Devries resisted this, and claimed that the
whole share of P. Hanson Hiss, undiminished by credit-
ing the misapplied trust funds, belonged, under the deed
of trust, to him, Devries, for the benefit of the creditors of
P. Hanson Hiss.    And this raises the first question which
we are required to decide on this appeal.

Mr. Devries stands in precisely the same position
towards the estate of Philip Hiss that P. Hanson Hiss
would have occupied had the deed of trust not been exe-
cuted.    It is equally certain that, when a trustee who

has a beneficial interest in a trust estate misappropriates a part of the trust property, a Court of equity will treat the amount of his defalcation as a payment to himself of that much of his interest. *Irby vs. Irby*, 25 *Beav.*, 632. It would be an idle display of research to multiply citations in support of this position. This doctrine has been extended to include even a derivative interest in a trust fund. *Jacubs vs. Rylance, L. R.*, 17 *Eq.*, 341; *Doering vs. Doering, L. R.*, 42 *Ch. D.*, 203. In *Fox vs. Buckley, L. R.*, 3 *Ch. D.*, 508, it appeared that Edmund Buckley, by his will, after making sundry dispositions of real and personal estate, gave all the freehold land and hereditaments, not otherwise devised, unto his executors, (of whom Sir Edmund Buckley was one,) their heirs and assigns, to the use of Sir Edmund Buckley and his assigns during his life, without impeachment of waste, with divers remainders over. The other executors permitted the whole control of the estate to fall into the hands of Sir Edmund, who afterwards committed breaches of trust, and then filed a petition for liquidation. In a proceeding instituted by the legatees, it was sought to hold the estates legally devised to Sir Edmund Buckley for life liable to reimburse his defalcations. This was opposed by the trustee under the liquidation. LITTLE, V. C. of the County Palatine, of Lancaster, in refusing the relief, said "that it was not disputed Sir Edmund Buckley, in his character of executor and trustee, had committed breaches of trust, and that his beneficial interest in the trust property was liable to be applied towards making good his breaches of trust. The only question was whether the property legally devised to him was subject to the same liability. The question was materially different from that which had often been before the Court of Chancery as to the right to impound or stop the beneficial interest of a defaulting trustee in order to make good a breach of trust committed by him.

In those cases there was something to be done in the administration of the trusts or of the assets, and the Court took that occasion to oblige any claimant upon the estate to satisfy his obligations before he was allowed to withdraw anything from it. But a legal devisee took *instanter* on the testator's death, and if the devisee was indebted to the testator, the debt could not be treated as forming a lien on the devise." * * * This was affirmed by the Court of Appeal. The relief was refused, not because an equitable interest of a defaulting trustee in real estate could not be made liable just as though it had been an interest in trust funds; but solely because the estate sought to be affected was a *legal* estate, and not an *equitable* one. When a Court of equity has acquired jurisdiction over the trust property, and has all the parties interested therein before it, and there are trusts yet to be performed in respect of the partition of the property, there is no reason why the Court should not prohibit a defaulting trustee from receiving any part of his equitable interest in the real estate until his defalcation is first made good out of that interest. What he owes to the trust estate ought to be deducted from what he is to receive from it, whether the trust estate consists of personal or of real property. This is obviously just and equitable, and violates no legal principle.

Now, what interest did P. Hanson Hiss take under the will of Philip Hiss? Was it a legal estate, or was it an equitable interest subject to the trusts named in the will, until an actual division of the property shall be made?

It is a rule of construction that the legal estate will be held to vest in the donee to uses, in order to enable him to perform the duties with which he is intrusted; and it was established at a very early period, and has since been generally acted on. *Hill on Trustees*, 231; 1 *Cru. Dig.*, *tit.* 12, *ch.* 1, *secs.* 20, 21 *and* 25. It seems to be

a reasonable conclusion "that the testator, by devising the property to the person who is directed to make the conveyance or sale intended, not merely to make him the medium or instrument through which to vest the estate in the beneficial devisee, but that he should take an estate commensurate with the duty which was assigned to him; and the ground for this construction is obviously strengthened when there are other purposes requiring that the trustee should have *some* estate." 3 *Jar. on Wills,* 58.    Accordingly it has been held that, where an estate is in the first instance given to trustees and their heirs upon trusts which do not exhaust the equitable fee simple, and for which a particular estate short of the legal fee in the trustees would be sufficient, but discretionary powers are superadded which cannot be exercised by the trustees without arming them with the means of passing the fee simple, there the trustees do not take a particular estate by way of vested interest with a power of passing the fee, but they retain the legal fee simple given to them in the first instance, on the footing that they were meant to exercise the discretion given to them by virtue of their *ownership* and not by the mere operation of a *power*.    *Watson vs. Pearson,* 2 *Exch.,* 581; *Blagrave vs. Blagrave,* 4 *Exch.,* 550; *Davies vs. Davies,* 1 *Q. B.,* 430; *Doe, dem. Cadogan vs. Ewart,* 7 *Ad. & El.,* 636; *Poad vs. Watson,* 6 *El. & Bl.,* 606, (88 *Eng. Com. Law.*)

Now, the entire residuum, which includes the whole of P. Hanson Hiss' share, was devised to the five trustees in fee simple, in the first instance, and they were given full power to sell and convey, in their discretion, all or any part of that residuum for the purpose of making partition or for any other purpose which in their judgment might benefit the estate.    There are active duties imposed upon them.    As the legal estate was expressly devised to them, and discretionary powers were superadded which require for their proper exercise that the trustees should be clothed

with the means of conveying the fee, the fee, and not a mere power passed. With respect to five-sixths of the residuum the trustees will continue to hold the legal title, even after an actual partition. These are continuing trusts. If they do not hold now the legal title to the one-sixth devised in trust for P. Hanson Hiss, they would not have taken an estate commensurate with their duties, which extend to the *whole* of the residuum, but an estate limited to five-sixths of the residuum, and a mere power as to the other sixth; though in the first instance the *entire* residuum was devised to them in fee simple, and though the superadded powers embrace within their scope the *whole* of the property devised. The rules of construction we have cited treat the trustees, under such circumstances, as vested with the legal ownership, rather than with a mere power, particularly where it is apparent, as it is here, that it was intended they should have *some* estate. The estate which the trustees took, was, therefore, a legal estate as to the whole residuum, and the trusts as to P. Hanson Hiss' one-sixth do not terminate until his share is ascertained by a partition in kind, or by a sale and division of the proceeds. He consequently did not take a legal estate in one-sixth of the residuum immediately upon the death of his father. His estate is an equitable one, which will become or ripen into a legal estate only upon the cessation of the trusts as to it—that is, upon the partition of the entire residuum. When all the duties imposed upon the trustees as to this one-sixth have been performed, and their prescribed powers with respect to it have been exhausted, the trusts will cease, and the legal estate will vest in the grantee of P. Hanson Hiss. *Chapman vs. Blissett, Cases Temp. Talb.*, 145. It results from these views that the equitable interest of P. Hanson Hiss is liable to be intercepted by a Court of equity to make good his defalcation. Mr. Devries took a conveyance of P. Hanson Hiss' interest subject to this

equity, and he cannot claim more than his grantor would have been entitled to receive. This conclusion works out the true equity of the case. P. Hanson Hiss has actually received a portion of his interest in the estate of his father. If his assignee were allowed to take a full one-sixth part of the residuum, undiminished by the amount of the defalcation, P. Hanson Hiss' share would be practically increased over all the others, to the extent of the amount misappropriated by him. That part of the decree of the Circuit Court which held that the share of P. Hanson Hiss was liable to make good his default is free from error, unless the trustees have estopped themselves to make the claim asserted by them. This brings us to the consideration of the other reason assigned for the reversal of that part of the decree which has just been discussed.

After P. Hanson Hiss appointed Mr. Devries trustee, it was suggested and supposed that it would be to the advantage of the creditors if the trustee were permitted to complete the unfinished contracts made by Mr. Hiss before his failure, and to work up the material then on hand. Accordingly, an agreement was prepared whereby the *unsecured* creditors of P. Hanson Hiss agreed with Mr. Devries that the latter should use the assets of the trust estate conveyed to him by P. Hanson Hiss as security for such advances as the trustee might make or procure to be made in finishing uncompleted work, in filling unexecuted orders, in paying liens on the trust property, &c., &c. This agreement was signed by the trustees under Philip Hiss' will for $20,708, which included the amount now claimed by the trustees in this case. It was also signed by a large number of other creditors, and was acted on by Mr. Devries. It is insisted that, inasmuch as the trustees described themselves as *unsecured* creditors in this agreement, which related exclusively to the settlement of P. Hanson Hiss' trust estate, they are estopped in the pending proceeding,

which relates to the estate of Philip Hiss, to claim that P. Hanson Hiss' interest in the latter estate shall make good his default as one of the trustees. We do not think the doctrine of estoppel is applicable. Recitals are generally made for the purpose of indicating or of carrying into effect the general object of the deed, and not for collateral purposes; and hence the rule is, that a recital is conclusive of the facts stated, only in an action of which the deed itself is the foundation or defence. That this limitation prevails, preventing the estoppel from having a collateral effect, appears from many cases. *Bigelow on Est.*, 341; *Carpenter vs. Buller*, 8 *Mees. & W.*, 209; *Southeastern Ry. Co. vs. Warton*, 6 *Hurl. & N.*, 520; *Young vs. Raincock*, 7 *Man., Gran. & Scott*, 310, (62 *Eng. Com. Law*); *Stronghill vs. Buck*, 14 *Q. B.*, 781; *Bank of America vs. Banks*, 101 *U. S.*, 240. In the case last cited suit was brought in Mississippi against husband and wife upon promissory notes signed by both. They pleaded the coverture of the wife when the notes were made and indorsed, and that the same were made and indorsed by her as the surety and accommodation indorser of her husband for certain purposes stated in the plea—those purposes not being, under the statutes of Mississippi, such as a *féme covert* could become liable for. Contemporaneously with the making of the notes, a deed of trust was executed by husband and wife conveying the wife's separate property to secure the payment of these notes, and reciting that the identical notes represented the wife's debts. The Supreme Court held that she was not estopped by the recitals in the deed of trust to set up the defence relied on, though the defence flatly contradicted the recital in the deed, and that she was not estopped, because, first, she was not *sui juris*, and because, secondly, "facts recited in an instrument may be controverted by the other party in an action not founded on the same instrument, but wholly collateral to it.

Devries, Trustee *vs.* Hiss, *et al.*

Recitals of the kind may be evidence for the party instituting the suit, but they are not conclusive.'' To allow an estoppel here would be giving to the recitals of the agreement a conclusive effect in a proceeding wholly collateral,—a proceeding not founded on or connected with the agreement, or the subject-matter of the agreement, in any way whatever.

It was further insisted that the decree of the Circuit Court was erroneous because it refused to reimburse Mr. Devries out of the estate of Philip Hiss for taxes claimed to have been paid upon or on account of that estate by him with funds in his hands belonging to the trust estate of P. Hanson Hiss. Having acquired under the deed of trust all of the interest of P. Hanson Hiss in the estate of Philip Hiss, Mr. Devries had the legal right to keep down the taxes, and, if he did in fact pay them out of the trust funds in his hands, he is clearly entitled to have the amount refunded by the estate for whose benefit he paid them. Mr. Devries, P. Hanson Hiss, and Mr. Hardy, the bookkeeper of P. Hanson Hiss, and of his trustee, all unequivocally testify that the taxes in question were paid by Mr. Devries out of the trust estate of P. Hanson Hiss. Some entries made in the books kept by Mr. Hardy have been relied on to show the contrary. Without attempting to unravel these entries, which Mr. Hardy admits to be erroneous, it is sufficient to observe that we cannot give to them the effect that is claimed without absolutely discrediting the three witnesses just named, and there is nothing in the record to warrant this being done. We are, therefore, of opinion that this part of the decree is erroneous. The same observations are applicable to the sum of three hundred dollars also paid by Mr. Devries, in the same manner, for interest due to the Savings Bank of Baltimore on a mortgage held by it on a part of Philip Hiss' property. Mr. Devries should be refunded this amount also.

Finally, it is objected that there was error in imposing upon Mr. Devries the costs incurred in taking and re-cording the testimony found in the record.   Most of this testimony relates to the payment of the taxes and the interest already alluded to, and we can see no reason why these costs should be charged against Mr. Devries.   As he is, according to our view of the case, entitled to be refunded these taxes and this interest, he clearly ought not to be charged with the costs which the successful assertion of his claim has occasioned.

The result is that the decree appealed from will be affirmed, except the part thereof which disallows the taxes and the mortgage interest paid by Mr. Devries; as to those parts it will be reversed and the cause will be remanded for further proceedings.

> *Decree affirmed in part, and*
> *reversed in part, and*
> *cause remanded.*

(Decided 20th June, 1890.)