FRANK GOSNELL, Trustee of JAMES H. FLACK *vs.*
D. HUDSON FLACK and WILLIAM E. HOFFMAN,
Administrators of THOMAS J. FLACK, and others.

*Rights of Distributee—Application of Distributive share
to Debt due Estate.*

Where a distributee, as administrator, has become indebted to his
father's estate, his distributive share will not pass to his trustee
under a deed for the benefit of creditors, but will be applied to
his indebtedness to his father's estate.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., BRYAN,
FOWLER, ROBERTS, MCSHERRY, and BRISCOE, J.

*Frank Gosnell,* (with whom was *Thomas M. Lanahan,*
on the brief,) for the appellant.

*William E. Hoffman,* (with whom was *S. Teackle Wallis,* on the brief,) for the appellees.

MCSHERRY, J., delivered the opinion of the Court.

In 1874 Thomas J. Flack died intestate leaving a
widow, several children and some grandchildren surviving him. Administration upon his estate was granted
to James W. Flack, his eldest son. Henry H. Flack
and David Hudson Flack, two of his other sons, were
indebted to their father in large amounts. These debts
remaining unpaid, and Henry H. and David Hudson
Flack becoming indebted also unto their brother James
W. conveyed to him in 1877, by a deed absolute upon

its face certain valuable real estate owned by them and known as the "Canton property" or the "Distillery property." At the same time there was also executed and acknowledged by the grantors and the grantee in the deed referred to, an agreement in writing setting forth the purposes for which the deed had been executed, and providing for the application to be made of the purchase money arising from a sale of the Canton property when a sale thereof should be made by James W. Flack. The deed was at once placed upon record but the agreement never was. James W. Flack as administrator stated several accounts in the Orphans' Court, between the date of his appointment and the middle of October, 1883. During all that time and until 1890, he collected rents belonging to the estate of his father and expended thereof upwards of twelve thousand dollars upon the Canton property for taxes, repairs, and other purposes. In 1890, having become heavily involved, and insolvent, he executed a deed of trust for the benefit of his creditors to Frank Gosnell, Esq.; and on the ninth of November in the same year his letters of administration were revoked by the Orphans' Court, and David Hudson Flack and William E. Hoffman, Esq., were appointed administrators in his stead. Mr. Gosnell claimed that the Canton property passed to him under the deed of trust; but the administrators of Thomas J. Flack disputed this and filed a bill in the Circuit Court for Baltimore County against Mr. Gosnell and sundry creditors of James W. Flack, alleging that under the limitations and provisions contained in the unrecorded agreement James W. Flack held the title to the Canton property in trust to secure the indebtedness due by Henry H. Flack and David Hudson Flack to the estate of their father, Thomas J. Flack, and praying that the trustee of James W. Flack be restrained by injunction from making sale of the property. In that case this Court

decided, *Hoffman and Flack, Adm'rs vs. Gosnell, Trustee, et al.,* 75 *Md.,* 577, that the unrecorded declaration of trust could not operate to the prejudice of James W. Flack's creditors who became such in good faith and in ignorance of its existence, and that the administrators were not at liberty to set up any secret equity to the exclusion of those creditors, but that they, the administrators, were entitled "to share *pari passu* with the other creditors in the distribution of the proceeds of the property."

In March, 1892, James W. Flack, in obedience to the order passed when his letters were revoked, propounded his seventh account in the Orphans' Court, and in that account he charged the estate of his father with the sum of $13,494.06 for expenses on the Canton property and for excess of interest. This charge was excepted to by one of the distributees of Thomas J. Flack. A hearing was had before the Orphans' Court, and in April, 1892, the exception was sustained, and the Register of Wills was directed to state another account, omitting that charge altogether. This was done in June following. The new seventh account was sworn to by James W. Flack, and he was shown to stand indebted to the estate in the sum of $13,425.84.

The new administrators had in the mean time stated an account, distributing the proceeds of a sale made by them of certain leasehold property belonging to the estate of Thomas J. Flack, but retained in their hands the sum of $2,851.79, the amount distributable to James W. Flack. Subsequently they filed a petition and the Orphans' Court passed an order thereon fixing a day for making distribution of this sum, and ordered notice to be given. On the day appointed some of the distributees filed a petition, praying that the above named sum should be distributed to them and insisting that no part of it should be paid over to James W. Flack or to any

person claiming under him.   Mr. Gosnell appeared and answered and claimed that the share of James W. Flack in his father's estate, and amounting as above stated to $2,851.79, was payable to him, the trustee, under the deed of trust, and was not liable to be applied in reducing the alleged indebtedness of the former administrator to the estate.   Evidence was adduced and after a hearing the Orphans' Court of Baltimore City passed an order dated July 19th, 1892, directing the administrators to credit upon James W. Flack's indebtedness of $13,425.84, due to his father's estate, the sum of $2,851.79 which would otherwise have been payable to him or his trustee, and to distribute the latter sum amongst the other distributees.   From this order Mr. Gosnell, the trustee of James W. Flack, has appealed.

It will be seen from this outline of the previous and the pending litigation between these parties that the question now involved and upon which we are required to pass is whether, under the circumstances stated, the distributive share of James W. Flack in his father's estate and now in the hands of the new administrators of that estate, is liable to be set-off by them against the alleged debt due by him to his father's estate; or whether Mr. Gosnell as his trustee is entitled to receive that share.

The right of an administrator to retain from the share of a distributee the amount due by the latter to the intestate out of whose estate he is entitled to a share is undeniably clear.   *Smith & Talbott vs. Donnell, Ex'r,* 9 *Gill,* 84; *Manning vs. Thruston, et al.,* 59 *Md.,* 218.   And we think it equally clear that this right exists where the debt has been incurred to the estate itself by the distributee as administrator after the decedent's death.   2 *Woerner on Adm.,* sec. 564.   The first proposition has been the settled law of Maryland for many years; and the second may be said to be a necessary consequence of

the other. There is nothing in the recent cases of *Devries, Trustee vs. Hiss,* 72 *Md.,* 560, and *Flack, et al. vs. Gosnell, Trustee, ante, page* 88, at all in conflict with these conclusions. Indeed, the principle which underlies those cases has no application to this. They hold that a legal estate owned or acquired by a trustee is not liable to be intercepted by a Court of equity to make good trust funds misappropriated by the trustee. But it does not follow from this doctrine that a distributee who is himself a debtor to the estate can claim and receive his distributive share and at the same time escape the payment of the debt he owes. If this were permissible he would, as stated in *Devries, Trustee vs. Hiss, et al.,* receive not only his full share but that share augmented by the amount of his indebtedness. It would be contrary to the plainest principles of justice to allow an administrator who is also a distributee, and who is indebted to the decedent, or who by reason of a subsequent defalcation becomes indebted to the estate, to escape the payment of his indebtedness if he happened to be insolvent, and besides that to receive his full, unabated distributive share. In such a case there is no question of impounding or intercepting a legal estate to satisfy in equity a delinquent trustee's malversations. It is merely an application of the doctrine of set-off. A Court of equity could not, and much more certainly could not the Orphans' Court, limited as its powers are, seize hold of a debtor's legal estate, not under its control and not subject to its jurisdiction, and impound that legal estate to satisfy a debt due to the trust estate being administered by either tribunal. That principle is widely different from the one which must be applied here. Here no legal estate had vested in the distributee in the first instance so indefeasibly as to exclude the administrator's right of set-off. The right to a distributive share is subordinate from the beginning to the distributee's indebt-

edness to the estate. If he is charged with the indebtedness, as he should be, he can only receive in the way of a distributive share what remains after deducting that indebtedness. In other words, his right to claim any portion of the estate is limited to that portion, if any, which is in excess of what he owes to the estate. This view is fully supported by the adjudged cases to which we have referred. Mr. Gosnell, the trustee of James W. Flack, stands in the latter's place and is entitled to no greater or other rights than his grantor could himself have asserted had the deed of trust not been made.

The only remaining inquiry is: Was James W. Flack indebted to his father's estate in an amount equal to his distributive share? This can be briefly answered. When the administrator's seventh account was excepted to, one of the objections was that he had improperly charged the estate with $13,494.06 for expenses on the Canton property and for excess of interest. This exception was sustained and the charge was disallowed by an order of the Orphans' Court dated April 7th, 1892, whereby James W. Flack was brought in debt to the estate to that amount; and a new seventh account was directed to be stated upon this basis. No appeal was taken from that order and on the seventh of June following the new seventh account was stated and sworn to by James W. Flack whereby he showed his indebtedness to the estate to be $13,425.84. No appeal, as has just been stated, was ever taken from the order of April the seventh and the adjudication thus made after a full hearing has never been reversed.

But, beyond this, it appears with clearness that the title to the Canton property stood in the name of James W. Flack after the conveyance to him in 1877. He was the ostensible owner, and, so far as the records disclosed, the actual and sole owner of the property. Upon the faith of that apparent ownership he obtained credit and

his creditors have, under our former decision, a right to be paid their claims out of the proceeds of its sale. Its present value depends in a large measure upon the fact that the property was kept in repair; and it was kept in repair by the expenditure upon it of the money of Thomas J. Flack's estate. Those expenditures were made chiefly by James W. Flack, the then administrator. He thus improved his own property by expending thereon part of the assets of his father's estate. He is therefore obviously bound to refund to that estate the amount thus applied.

In the face of these facts and with the decision of the Orphans' Court on the same subject unappealed from and unreversed, it is difficult to escape the conclusion that he is a debtor to his father's estate.

Entertaining these views we must affirm the order appealed from.

*Order affirmed, with costs.*