Argued February 26, affirmed March 25, 1924.

## CORNELIUS C. STANLEY ET AL. *v.* UNITED STATES NATIONAL BANK, ET AL.

(224 Pac. 835.)

**Equity—Only Court of Equity can Declare Interest of Executor as Legatee Divested by His Devastavit.**

1. A court of probate has no authority to enter an effective decree declaring that an executor has been divested of his title or interest as legatee to the remaining property of the estate as a consequence of his *devastavit,* especially as against the lien of his judgment creditor; only a court of equity having jurisdiction and power to grant such relief.

**Equity—Finding of Amount of Devastavit by Probate Court Held not Prerequisite to Decree of Court of Equity Declaring Effect Thereof.**

2. Where a court of equity is called upon to exercise its jurisdiction to declare that an executor has been divested of his title or interest as legatee in consequence of his *devastavit,* incidentally involving the construction of a will, the determination of the amount of the *devastavit* by a probate court is not a prerequisite to the exercise of such equitable jurisdiction.

**Executors and Administrators—Duty to Retain Legacy from Debtor of Estate and Apply It to Debt Though Legatee is Executor Himself.**

3. The right and duty of an executor or administrator to retain a legacy from a debtor to the estate and apply it to the indebtedness exists though the heir or legatee is the administrator or executor himself, and it is immaterial whether the indebtedness arose before or after the death of deceased.

Executors and Administrators—Debt of Legatee to Estate Pro Tanto Satisfaction of Legacy.

4. The indebtedness of a legatee or distributee constitutes assets of the estate, which it is the duty of the executor or administrator to collect for the benefit of creditors, legatees and distributees, and to the extent of such indebtedness the distributive share or legacy of the debtor is regarded as having been paid.

Executors and Administrators—Right to Retain Legacy from Debtor to Estate Exists in Case of Debt Created by Devastavit by Legatee in Capacity of Executor.

5. The right to retain a legacy or distributive share from a debtor to the estate exists in the case of an indebtedness to the estate arising out of the conversion, waste or misapplication of assets by a legatee or distributee while acting in the capacity of an executor or administrator.

Wills—Assignee of Legacy Takes Subject to Existing Equities in Favor of Estate.

6. An assignee of a legacy, whether with or without notice of legatee's indebtedness to the estate, takes subject to existing equities.

Executors and Administrators—Executor's Right of Retainer or Setoff Held to Exist as to Real Property Passing to Debtor by Devise.

7. Where an executor is required under a will to convert the real and personal property into cash, and to provide a fund for distribution among the beneficiaries thereof, the right of retainer or setoff by the executor as against a legatee or distributee indebted to the estate may be asserted as to the real property passing to a debtor of the estate by devise.

Trusts—Amount of Default of Trustee Who is also Beneficiary is First Claim on His Beneficial Interest.

8. Where a trustee who is also a beneficiary is a defaulter, the amount of default is a first claim on his beneficial interest, even when he has assigned his beneficial interest before default.

Executors and Administrators—Act of Executor Under Power Held to Constitute Satisfaction of His Claim Against Estate as Devisee.

9. Where a will authorized the executor who was also a devisee to sell and dispose of all the assets of the estate, including the real property therein, and required him upon making such disposition to apply the proceeds for the benefit of the legatees and devisees under the will, and the executor did dispose of more than one-half of the estate having a value far in excess of his beneficial interest, and instead of making any provision for the other legatees and devisees he appropriated the entire amount realized upon the sales to himself, having received the full value of his interest in the estate, equitably, neither he nor anyone claiming under him could assert a further claim upon the estate.

From Coos: JOHN S. COKE, Judge.

Department 2.

'AFFIRMED.

For appellant there was a brief over the name of *Messrs. Platt & Platt, Montgomery & Fales,* with oral agruments by *Mr. A. D. Platt* and *Mr. H. G. Platt.*

For respondents there was a brief and oral argument by *Mr. John H. Hall.*

For interveners there was a brief over the name of *Mr. T. W. Hughes,* with an oral argument by *Mr. J. P. Kavanaugh.*

McCOURT, J.—This is a suit to quiet title to 160 acres of growing and standing timber and to an undivided one-half interest in and to 680 acres of land, all situated in Coos County, Oregon. The land and the timber in suit are assets of the estate of Lemuel C. Stanley, deceased. The plaintiff Wm. H. Stanley and the defendant F. S. Stanley are sons of the above-named Lemuel C. Stanley, deceased, and each is a devisee and legatee under the last will and testament of the decedent. The plaintiffs, Cornelius C. Stanley, Wilbur Stanley and Mildred Cave are all children of Wm. H. Stanley, and are also devisees and legatees under said will. The interveners, Geo. Parks Stanley and Harriet Cornelia Woodward, are children of the defendant F. S. Stanley, and claim to be devisees and legatees under said will.

Lemuel C. Stanley died in the State of Wisconsin in 1909, leaving an estate appraised at the sum of $438,579.53, consisting of personal and real prop-

erty in the State of Wisconsin and real property in the State of Oregon. The defendant F. S. Stanley was named as sole executor of the last will and testament of Lemuel C. Stanley, to act as such executor without bonds or other security, and by the terms of the will, the executor thereof was directed and empowered to take and have full power and control of all the assets and properties of the estate, and to hold and invest the same as in his judgment would be for the best interests of all concerned, with full power and authority to sell, dispose of and convey any property of which the testator might die siesed or possessed, as such executor might deem for the best interests of the estate. The executor was also directed to provide for the specific legacies created by the will and pay the same to the legatees named therein out of the assets of the estate, at the times designated in the will and in accordance with the directions thereof.

Among the assets of the estate were the lands above referred to, in which the decedent at the time of his death owned an undivided one-half interest. The standing timber above mentioned was purchased by F. S. Stanley with funds of the estate of Lemuel C. Stanley, while acting as executor of the will of the latter.

The will of Lemuel C. Stanley was probated in Wisconsin in November, 1909, and thereupon F. S. Stanley qualified and entered upon his duties as executor of said will. As such executor, defendant F. S. Stanley assumed the control and management of all the assets of the estate, and continued to administer the same until April, 1917, at which time it was ascertained that he had failed and neglected to provide for or pay any of the legacies created by the

will, except those made to himself, and that he had wasted and misappropriated a large portion of the estate, whereupon he was removed from the office of executor, and plaintiff E. M. Bradford was appointed administrator of the estate with the will annexed.

The will of Lemuel C. Stanley, deceased, was not offered for probate in the State of Oregon, and no administration of the estate, ancillary or otherwise thereof, has been instituted in this state. At the time of the death of the testator, his estate included money and other personal property to a large amount, and considerably in excess of the sums required to pay debts, funeral expenses and all specific legacies.

A brief summary of the legacies and bequests and directions to the executor contained in the will of Lemuel C. Stanley, deceased, is as follows:

"First. Direction as to the payment of debts and funeral expenses.

"Second. Legacy to his son, F. S. Stanley, of $50,000.

"Third. Legacy of $50,000, the income only to his son, Wm. H. Stanley, during his life and at his death the sum to be paid to his children or their survivors, the plaintiffs, Cornelius C. Stanley, Wilbur Stanley and Mildred Cave, the living children of Wm. H. Stanley.

"Fourth. A devise to F. S. Stanley of certain real estate in Wisconsin and a legacy of certain personal property.

"Fifth. A direction for the purchase of a farm of the value of $5,000, the life use thereof to be in Wm. H. Stanley, and the title at his death to pass to his children.

"Sixth. I give, grant, devise and bequeath all of the balance and residue of my estate of every name and nature, real, personal and mixed as follows:

"To my son, Frederick S. Stanley one-half thereof, and to the said children of my son William H. Stanley herein named, the other half thereof to be paid to them as hereinafter named and provided and under the conditions herein specified. My executor shall take full control of my estate and hold and invest the same as in his judgment will be for the best interests of all concerned and shall pay to the said Lemuel, Cornelius, Wibur and Mildred Stanley, children of my son William H. Stanley, such part of the income thereof only as he may deem sufficient for their support and education until he or she may arrive at the age of thirty-five (35) years, at which time the part and share herein devised to him or her shall be paid, and said executor may in his discretion pay the same when he or she shall arrive at the age of twenty-five (25) years and in case either or any of the children of my son William H. Stanley shall die before my decease or before his or her said share is paid then the survivors shall be entitled to his or her share.

"Seventh. It is my desire that the one-half of the residue of my estate herein bequeathed and devised to my son Frederick S. Stanley shall be invested by him as he thinks best and the income therefrom to be for his own use during his lifetime and at his death said one-half of the residue of my estate to go to George Parks Stanley and Harriet Cornelia Stanley, children of my son Frederick S. Stanley.

"Eighth. F. S. Stanley named as executor, directing that no bond be required and granting him full power and control of all property of the estate, with the right and power to sell all or any part thereof at his discretion.

"Ninth. The ninth clause of the will consisted of directions to the executor and expressed further specific limitations as to the manner of handling the half of his estate bequeathed to the children of Wm. H. Stanley and the investment of the specific legacy of $50,000, the income of which was bequeathed to

Wm. H. Stanley during his lifetime and the principal to his children at his death.''

During the course of his administration of the estate defendant F. S. Stanley paid himself, without order of court, all the amount of cash and specific legacies bequeathed him under the will, and in addition thereto, according to his own admission, he appropriated and converted to his own use, $84,-540.70 of the funds of the estate, but the uncontradicted testimony in the record shows that defendant F. S. Stanley, as such executor, in addition to the particular bequests made him by the will, appropriated and converted to his own use out of the estate, money and assets amounting to $149,965.01. The amount of the assets remaining in the hands of defendant F. S. Stanley at the time he was removed as executor, as above stated, amounted in value to the sum of $97,758.89, including the real property in controversy in this suit. Defendant F. S. Stanley was, at the time he was removed as executor, and is now, insolvent.

In March, 1917, the Lumbermen's National Bank of Portland, Oregon, recovered a judgment against defendant F. S. Stanley in a sum in excess of $30,000, on which there remains unpaid a balance in excess of $12,000. The judgment mentioned was recorded in Coos County in May, 1917, and subsequently the judgment creditor sold and transferred the judgment to the defendant United States National Bank of Portland, Oregon.

Defendant F. S. Stanley did not file an answer or make any defense in the suit. The facts above stated are not controverted.

Under the issues formed by the pleadings of the parties, it is claimed by the plaintiffs that under and

by the will of Lemuel C. Stanley, an undivided one half of the real estate in Coos County, Oregon, vested in them, and the interveners claim that under and by the will, the other undivided one half vested in them, subject to a life estate in F. S. Stanley. Defendant bank claims that F. S. Stanley, under the will, was vested with a fee, and not merely a life estate, in an undivided one half of the lands mentioned, and that its judgment thereafter became a lien thereon.

In support of their right to maintain this suit, plaintiffs and interveners urged in the court below, and renew the contention here, that the misappropriation of the assets of the estate by F. S. Stanley while acting as executor to an amount largely in excess of the value of his share of the estate, in view of his insolvency, is deemed in equity a full satisfaction of his right and claim to such share and works an extinguishment of his title in and to the remaining assets, both as against himself and his judgment debtor.

On the other hand, the defendant bank insists that the principle which plaintiffs and interveners seek to invoke is restricted to personal property of the estate, and does not extend to real property, the title to which it is claimed, vested in F. S. Stanley upon the death of the testator, subject only to the qualification created by statute, that such title might be divested by a sale thereof for the purpose of paying debts and particular bequests, such sale to be had, as respects the property in controversy, by appropriate proceedings in the probate court.

The Circuit Court found in favor of plaintiffs and interveners, and entered a decree quieting their title as against defendants. The defendant bank appeals from that decree.

The defendant bank questions the jurisdiction of a court of equity to entertain this suit. Counsel for defendant say that the case of plaintiffs and interveners rests upon the claim of the *devastavit* of the estate of Lemuel C. Stanley, deceased, committed by F. S. Stanley while executor thereof, which must be established in the probate court. They cite *Steele* v. *Holladay,* 20 Or. 70 (25 Pac. 69, 10 L. R. A. 670), wherein the court said:

"For a *devastavit,* an executor or administrator is liable to be called to an account in the County Court."

It is further claimed that resort to a court of equity is not necessary in order to relieve the land from the record lien of the judgment held by the defendant bank, for the reason that the property might be sold by the probate court to pay debts, costs of administration and legacies, free from the lien of the judgment.

1, 2. While a probate court may take an account and determine the amount of the waste and misappropriation committed by an executor or administrator, it is not authorized to enter an effective decree declaring that such executor has been divested of his title or interest as legatee or devisee to the remaining property of the estate as a consequence of his *devastavit* especially as against the lien of his judgment creditor. Nor can that result be accomplished by a probate sale of less than all the assets of the estate. A court of equity is the only tribunal having jurisdiction and power to grant the relief mentioned, and when, as in the instant suit, a case is presented calling for such relief, and incidentally involving the construction of a will, the determination of the amount of the *devastavit* by a probate

court is not a prerequisite to the exercise of a jurisdiction by a court of equity.

3. The right of an executor or administrator to retain a legacy or distributive share from a debtor to the estate and apply it to the indebtedness, is recognized . by virtually all the authorities: Woerner, American Law of Administration (2 ed.), § 564. And this right and duty of retainer exists though the heir or legatee is the administrator or executor himself, and it is immaterial whether he was indebted to the deceased before his death or contracted the liability to the estate thereafter: 11 R. C. L. 245.

4. Indebtedness of a legatee or distributee constitutes assets of the estate, which it is the duty of the executor or administrator to collect for the benefit of creditors, legatees and distributees. To the extent of his indebtedness withheld from the estate by the legatee or distributee, the distributive share or legacy of the debtor, is regarded as having been paid, and his claim upon the estate satisfied *pro tanto,* and where the amount of the indebtedness of the distributee or legatee exceeds the value of the legacy or distributive share, it extinguishes his title to the property of the estate in the hands of the executor or administrator available for distribution: *Streety* v. *McCurdy,* 104 Ala. 493 (16 South. 686); *Webb* v. *Fuller,* 85 Me. 443 (27 Atl. 346, 22 L. R. A. 177); *Fiscus* v. *Moore,* 121 Ind. 547 (23 N. E. 362, 7 L. R. A. 235); *Holmes* v. *McPheeters,* 149 Ind. 587 (49 N. E. 452); *In re Lietman,* 149 Mo. 112 (50 S. W. 307, 73 Am. St. Rep. 374); *Armour* v. *Kendall,* 15 R. I. 193 (2 Atl. 311); *Oxsheer* v. *Nave,* 90 Tex. 568 (40 S. W. 7, 37 L. R. A. 98); *New* v. *New,* 127 Ind. 576 (27 N. E. 154).

5. The right to retain a legacy or distributive share from a debtor to the estate, exists in the case of an indebtedness to the estate arising out of the conversion, waste or misapplication of assets by a legatee or distributee while acting in the capacity of executor or administrator: *Gosnell* v. *Flack,* 76 Md. 423 (25 Atl. 411, 18 L. R. A. 158); *Linthicum* v. *Polk,* 93 Md. 84 (48 Atl. 842); *Young* v. *Schelly* (N. J. Eq.), 21 Atl. 1049; *Clapp* v. *Meserole,* 40 N. Y. 281, 1 Abb. Dec. (N. Y.) 362; *Grant* v. *Edwards,* 92 N. C. 447; *Small* v. *Usher,* 77 S. C. 115 (57 S. E. 623); *Re Hervey* (Eng.), 61 L. T., N. S., 429.

6. It is universally held that the assignee of a legacy or distributive share, whether with or without notice of the legatee's or distributee's indebtedness to the estate, takes subject to existing equities, and is in no better situation than his assignor would have occupied had the assignment not been made. And this is likewise true of one claiming a lien upon such legacy or distributive share: 11 R. C. L. 246.

Whether the right of retainer or setoff under discussion may be asserted with respect to real property passing to the debtor by inheritance or devise, is a question upon which the authorities are about equally divided. Those which refuse to apply the doctrine of retainer or set-off in respect to real property do so on the theory that the title to realty vests in the heirs or devisees immediately on the death of the ancestor, and as the administrator or executor has nothing to do with the real property, except as he may resort to it in order to pay debts or legacies, there is no opportunity to set off the debt of the heir or legatee against his interest in the realty.

A well-considered case sustaining the foregoing rule is *Marvin* v. *Bowlby,* 142 Mich. 245 (105 N. W. 751, 113 Am. St. Rep. 574, 7 Ann. Cas. 559, 4 L. R. A.

(N. S.) 189). An annotated note is appended to the case in each of the three reports last mentioned, in which may be found a large number of cases which support the decision in the reported case.

The cases in which the right of retainer or set-off is recognized in respect to real property place their decisions on the ground that under the local statute of distribution or the will involved in the particular case, the realty and personalty are blended into one fund, distributable among the same persons, who are then in the position to require one another to account for such portion of the decedent's estate as they have already received.

A late case adhering to the latter theory is that of *Wilson* v. *Channell*, 102 Kan. 793 (175 Pac. 95, 1 A. L. R. 987, and note), in which all the cases pertaining to the question are gathered, digested and arranged under appropriate heads. Also see *Stenson* v. *Halvorson*, 28 N. D. 151 (147 N. W. 800, Ann. Cas. 1916D, 1289 and note, L. R. A. 1915A, 1179 and note).

7. It may be that in this state the doctrine of retainer or set-off properly cannot be asserted in respect to the real property of the estate in cases where the ancestor dies intestate or leaving a will which does not give the executor any powers beyond those expressly provided by the statutes, but in cases where, by the provisions of a will, the executor named therein is required or empowered to dispose of and convert both the real and personal property into cash and thereby provide a fund for distribution and division among the beneficiaries of the will, the weight of authority extends and applies the doctrine to the real property of the estate, holding that the equities which compel the rule concerning per-

sonal property are just as strong in favor of the same rule concerning real property: *Boyer* v. *Robinson,* 26 Wash. 117 (66 Pac. 119); *Oxsheer* v. *Nave,* 90 Tex. 568 (40 South. 7, 37 L. R. A. 98); *Ayers* v. *King,* 168 Mo. 244 (67 S. W. 558, 90 Am. St. Rep. 452), and earlier cases cited therein; *Streety* v. *Mc-Curdy,* 104 Ala. 493 (16 South. 686); *Fiscus* v. *Moore,* 121 Ind. 547 (23 N. E. 362, 7 L. R. A. 235); *Devries, Trustee,* v. *Hiss,* 72 Md. 560 (20 Atl. 131); *Gosnell* v. *Flack,* 76 Md. 423 (25 Atl. 411, 18 L. R. A. 158).

*Boyer* v. *Robinson,* 26 Wash. 117 (66 Pac. 119), involved a will which gave to the executor thereof authority and powers substantially the same as those conferred upon the executor by the testator in the will under consideration in the instant case. The estate consisted of real and personal property of the value of $117,000, which he devised to his seven children in equal undivided shares. One of the devisees was indebted to the estate in a large sum, and against whom defendant Robinson obtained a judgment which he claimed was a lien upon all the interest of the judgment creditor in the real estate of the testator. The suit was instituted to remove the cloud cast by the judgment lien on the real estate. The court said:

"It is urged that at common law the real property in decedent was not liable in any case for the payment of his simple contract debts, and that under this rule a debt due from an heir or devisee to the decedent could not be offset against, or retained from, his portion of the real estate by the executor or administrator * * . But under our law the real property is subject to the payment of the simple contract debts of the decedent. * *

"It may be conceded that the rule urged by appellant has some support in authority, but we think the weight of authority, as well as equitable principles, do not recognize such rule. * *

"It seems apparent that before the devisee can have a distributive interest in the estate his debt due the estate must be settled. The interest of the devisees cannot be distributed until the assets of the estate are determined. The averments of the complaint show that Franklin D. Boyer has in fact no interest in the estate. The claim of lien, then, is an unsubstantial cloud upheld by appellant. It is in the way of the settlement of the estate and the trust committed to the executors."

In *Wilson* v. *Channell, supra,* the court said:

"There is no substantial justification for a less equitable rule in favor of the estate, so far as real property is concerned, than there is for the rule, acknowledged by almost all the authorities, concerning personal property. If, in the distribution of personal property, a distributee who is a debtor of the estate gets an advantage over the other distributees, because his debt is not deducted from his distributive share, then the inheritor of real property likewise gets an advantage over the other inheritors, if his debt to the estate cannot be in some way deducted from the share of real property which he receives. The equities which compel the rule concerning personal property are just as strong in favor of the same rule concerning real property."

*Devries, Trustee,* v. *Hiss,* 72 Md. 560 (20 Atl. 131), was a case in which the executor, who was himself a devisee under the will, had misappropriated funds of the estate to a large amount and had assigned his interest in the realty to a trustee for his creditors. By the suit it was sought therein to intercept his interest in the estate to make good his defalcation. The court said:

" * * when a trustee who has a beneficial interest in a trust estate misappropriates a part of the trust property, a court of equity will treat the amount of his defalcation as a payment to himself of that much of his interest: *Irby* v. *Irby,* 25 Beav.

632. It would be an idle display of research to multiply citations in support of this position. This doctrine has been extended to include even a derivative interest in a trust fund. *Jacubs* v. *Rylance,* L. R. 17 Eq. 341. * *

"When a court of equity has acquired jurisdiction over the trust property, and has all the parties interested therein before it, and there are trusts yet to be performed in respect of the partition of the property, there is no reason why the court should not prohibit a defaulting trustee from receiving any part of his equitable interest in the real estate until his defalcation is first made good out of that interest. What he owes to the trust estate ought to be deducted from what he is to receive from it, whether the trust estate consists of personal or of real property. This is obviously just and equitable, and violates no legal principle."

The doctrine above stated was reaffirmed in the later case of *Gosnell* v. *Flack, supra.* That case involved real property and the defalcation of an administrator who was also an heir and distributee of the estate. The court said:

"Here no legal estate had vested in the distributee in the first instance so indefeasibly as to exclude the administrator's right of set-off. The right to a distributive share is subordinate from the beginning to the distributee's indebtedness to the estate."

The Maryland cases above cited, and the English cases referred to therein, hold that a legal estate owned or acquired by a trustee, and not a part of the trust estate to which he owes the duties of a trustee, is not liable to be intercepted by a court of equity to make good trust funds misappropriated by the trustee. That principle does not operate to prevent a court of equity from reaching the beneficial interest of Stanley in the real property of the estate for the purpose of satisfying so far as it will,

his *devastavit,* for the reason that in the instant case the legal title to the realty which vested in Stanley, at the death of the testator, constituted a part of the estate which it was his duty to administer, as executor.

8, 9. The will in the instant case placed complete and exclusive control and management of all the assets of the estate in the hands of defendant F. S. Stanley as executor, with full power to dispose of the same. His authority, power and duty as executor, extended to his individual title and interest in the realty which was part of the trust estate confided to him. Under the power of sale given him by the will, the executor could transfer to third parties the absolute title to either real or personal property, his own interest therein as well as the interest of other legatees and devisees under the will: *Beakey* v. *Knutson,* 90 Or. 574 (174 Pac. 1149, 177 Pac. 955); *Gildersleeve* v. *Lee,* 100 Or. 578 (198 Pac. 246). He could sell real property without first exhausting personal property and when selling real property, as executor, it was his duty to convey his own interest therein as well as that of the other devisees under the will. It was made his duty under the will to provide for the particular legacies created thereby, out of the assets of the estate, and he was authorized to hold and invest all the funds of the estate until the youngest plaintiff herein reached the age of 35 years. As executor, he occupied the position and possessed all the power and authority of an ordinary trustee who holds property with power to sell the same and is charged with the duty of managing, investing and paying over or transferring the trust property at a future date to the beneficiaries of the trust.

Where a trustee who is also a beneficiary is a defaulter, the amount of the default is a first claim on his beneficial interest, even when he has assigned his beneficial interest before default: *Doering* v. *Doering* (Eng.), 42 Ch. Div. 203; *Hart's Estate,* 203 Pa. St. 503 (53 Atl. 373).

In *Doering* v. *Doering, supra,* the court said:

"The theory on which that rule is based is that the court treats the trustee as having received his share by anticipation, and the answer to any claim made by the trustee is this: 'You have already received your share; you have it in your own hands'; and his assignee is in no better position."

In the instant case, the will under which Stanley was the executor authorized him to sell and dispose of all the assets of the estate, including the real property included therein, and required him upon making such disposition to set aside the proceeds for the benefit of those named as legatees and devisees under the will. In the exercise of his authority and powers as executor, defendant Stanley did dispose of more than one half of the estate, having a value far in excess of his beneficial interest, but instead of making any provision, as he was required to do under the will, for the other legatees and devisees therein, he appropriated the entire amount realized upon the sales to himself. Stated otherwise, he paid himself the full value of all his interest in the estate, and neglected to pay the other beneficiaries under the will any part of theirs. Having received the full value of his interest in the estate, equitably, neither he nor anyone claiming under him, can justly assert a further claim upon the estate. His rights therein have been satisfied, and in equity such satisfaction operates to extinguish his title to the remaining property of the estate.

As above stated, the amount of the misappropriation committed by defendant F. S. Stanley, as executor, exceeds in amount the value of his interest in the estate, whether that interest included the fee or a life estate in the land. It is therefore unnecessary, so far as the defendant bank is concerned, to determine whether the devise to Stanley of one half of the residue of the estate granted a fee or only a life estate in the real property, and the question is not here as between the plaintiffs and the interveners.

The Circuit Court sustained the claim of the interveners, and determined that under the terms of the will, Stanley acquired a life estate in the realty. Plaintiffs have not appealed from that decree, and presumably are satisfied therewith.

The decree of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.