In the Matter of the Estate of PETER SHANABURGH, Deceased.

Surrogate's Court, Orange County, February 25, 1935.

*John F. Halstead*, for the administrator c. t. a.

*Watts, Oakes & Bright [Charles C. Redfield* of counsel], for the assignee of the legatee.

TAYLOR, S. This will was admitted to probate May 27, 1929. The executor was one of the legatees, and in November following assigned to one M. Arthur Lain all his right, title and interest as such legatee. Thereafter the executor was directed to account and, in the decree consequent thereupon, was surcharged a small amount. Later the original executor was removed and an administrator with the will annexed appointed. It appears upon this accounting that the original executor should be further surcharged, and the particular question is whether Lain, the assignee, acquired under his assignment all the interest of his assignor as legatee, subject only to the *then* existing equities between his assignor and the estate and whether the peculations or mismanagement on the part of the executor subsequent to the assignment should now be charged against the interests acquired by Lain.

The assignee cites *Muller* v. *National Surety Company* (91 Misc. 544) as absolutely decisive of the question presented. As the title indicates, that was an action against the surety upon the administrator's bond. There, as here, the administrator, also a distributee, assigned his interest and in the account which followed later the administrator was surcharged with payments illegally made after the date of the assignment. It was necessary for the assignee to assert her rights against the surety, and was successful in so doing. The case is distinguishable from the instant case in that it was against the surety who was bound, of course, to make good to the estate and to every one interested therein whatever loss might be sustained through mismanagement on the part of the administrator. While the Appellate Term used language which, taken by itself and disassociated from the entire opinion and the actual decision reached, might seem to require a decision here in favor of the assignee, it is submitted that the case is authority for the correct conclusion reached and we should read the opinion in its entirety in the light of that conclusion. This case was affirmed in the Appellate Division without opinion (172 App. Div. 966), which only means that the appellate court concurred in the conclusion without necessarily adopting the reasoning. (*Scott & Co., Inc.*, v. *Scott*, 186 App. Div. 518, 526; *Rogers* v. *Decker*, 131 N. Y. 490.)

It is true that in the general law of assignments an assignee takes the interest of his assignor subject to the equities existing at the time of the assignment (Restatement of the Law of Contracts, § 167, subd. 1; *Lawrence* v. *Congregational Church*, 164 N. Y. 115, 119), but it is submitted that an exception to this rule should apply in cases of assignments by legatees or distributees who are also executors or administrators.

That there are exceptions to this general rule is illustrated in cases of assignments by contractors of interim payments and subsequent breach of the contract on the part of the contractor, and in such instances it has been held that the installment payment is subject to deduction, even in the hands of an assignee, for damages for subsequent breach of the contract on the part of the contractor. (*Seibert* v. *Dunn*, 216 N. Y. 237; *People* v. *Third National Bank*, 159 id. 382; *National Nassau Bank* v. *Ludington's Sons, Inc.*, 164 App. Div. 466.)

As another exception to the general rule reference is made to the transfer of an interest in a partnership to a third person, and in such cases " the share is subject to the fluctuations of the business, and if, on winding up the firm, the transferring partner's interest has no pecuniary value, the transferee takes nothing by his transfer." (Partnership, 47 C. J. 799.)

In *Clark* v. *Truslow* (161 App. Div. 675) it appeared that a residuary legatee had been made a payment on account of her legacy prior to any judicial settlement and thereafter because of the closing of the bank in which the estate funds were deposited there were insufficient funds to pay the general legacies, and it was held that refund must be made, the court saying, " the defendant, by requesting and receiving a prepayment on account of her residuary legacy before a judicial settlement of the accounts of the executors, took such prepayment at her own risk to the extent that, in the absence of a judicial accounting, she subjected herself to the same liability to refund as if she had received the money with knowledge that the other legacies and the debts of the decedent had not been paid or provided for " (pp. 677, 678).

While there are cases which hold that where an advance payment has been made on account of a legacy at a time when it appeared that the assets were ample to pay all legacies and debts, and the subsequent deficiency of assets to fully pay the remaining legacies was due to the misconduct of the fiduciary, then repayment may not be required (*Buffalo Trust Co.* v. *Leonard*, 154 N. Y. 141; 3 Woerner's American Law of Administration, p. 1730), there was in this case no actual payment, and, further, the fiduciary's own

legacy or distributive share is subject to equities which do not exist in other cases.

A fiduciary owes a peculiar duty to his estate and it would be inequitable to permit him to place his own legacy or distributive share beyond surcharge for his own misconduct; his legacy or distributive share is subject to this equity the moment it comes into existence; it inheres in the legacy as part and parcel of it, and as between the two equitable interests (that of the assignee and the right of the estate to surcharge), other things being equal, the one that is prior in time is superior in right. (*Central Trust Co.* v. *West India Imp. Co.*, 169 N. Y. 314, 324; *Trustees of Union College* v. *Wheeler*, 61 id. 88, 104.)

In *Wilson* v. *Channell* (102 Kan. 793; 175 P. 95) it was held that an indebtedness owing by an heir to his ancestor constitutes an equitable lien upon such heir's distributive share in the ancestor's real property superior to the lien of a judgment existing and docketed against the heir at the time of the ancestor's death, and that after final settlement the interests of the other heirs in the real property are superior to the lien of the judgment creditor.

*Matter of Baily* (156 Penn. St. 634; 27 A. 560) is somewhat analogous to the case under consideration. There the testator, Baily, and Francis Worth were sureties on the bond of Ebenezer Worth as guardian. The guardian became insolvent, left the State, a new guardian was appointed and a balance was found due the minors from the old guardian. Meanwhile, Baily died, leaving a will, giving a legacy to his cosurety, Francis Worth. Baily's executors paid the whole deficiency in the minors' estate and Francis Worth assigned his legacy to the defendant in the action. It was held, among other things, that " if the debt of the principal has been paid by the surety or his estate, such payment may be relied on to satisfy or reduce the amount of the legacy, and this is so, although the payment was made by the estate after proceedings for the recovery of the legacy were instituted." The point was made that as one Baker purchased the legacy before the payment by the estate of such surcharge, such payment was not available as a partial defense and it was urged that when Worth transferred the legacy the estate had made no demand against him which was applicable to it, to which the court answered, " we think this contention, to the extent that it denies the existence of such an equity in the estate at the time of the transfer, is unsound * * *. While the action for it cannot be maintained until default and payment as above stated, it is nevertheless true that the right to have and the liability to make contributions inhere in the transaction by which the sureties were jointly and severally bound for the debt

of their principal. * * *. This equity was not destroyed nor the defense founded upon it affected by the assignment of the legacy to Baker. He acquired by his purchase such right to the legacy as his assignor had, and this right, as we have seen, was qualified by the estate's equity against the latter as co-surety of the testator."

A well-known text writer says that " it is held that the liability of an executor for *devastavit* relates back to his appointment, and that of an administrator to the date of his bond." (3 Woerner's American Law of Administration, p. 1834.)

The Court of Appeals, in *Deobold* v. *Oppermann* (111 N. Y. 531, 539), said that " it would be contrary to the policy of the law to allow an administrator, at the outset of his administration, by contract, to place the funds of the estate beyond the reach of the court, and irreclaimable until after all the duties of administration have been performed by the administrator. It would certainly be no excuse to an administrator for disobedience to an order of the surrogate, as to the disposition of any portion of the estate, to allege that it was impossible for him to obey, because he had placed its funds out of his possession. Neither would it be any defense to a third person, in an action by any one having authority to recover possession of such funds, to plead that he held them by virtue of a contract, with a former trustee, entered into with him as such trustee."

The title of a legatee is inchoate until assent to the legacy is given by the executor (*Matter of Van Houten*, 18 App. Div. 301, 304), and, therefore, all the assignee here acquired was a chose in action, subject to all equities which attached to it.

It may very well be said that improper withdrawals or payments from the estate fund must be considered to have been first from so much thereof as might be said to be the fiduciary's own funds, and that the estate funds for the payment of debts and legacies other than that of the fiduciary remained to the very last. (*Matter of Accles*, 153 Misc. 421, 423.)

By the assignment the executor received his legacy in advance of the other legatees and of the accounting. He had no right to thus give himself a preference. (2 Williams Executors & Administrators [7th Am. ed.], 661.) The assignee took subject to this rule.

An English case (*Matter of Hervey*, 61 L. T. [N. S.] 429) is very much to the point. The defendant was the administratrix of Hervey and as one of the next of kin was entitled, after payment of debts, to a substantial portion of the residuary estate. Before the death of Hervey the defendant " settled all her property by a covenant to settle after-acquired property." It was subsequently

determined that the defendant should be surcharged because of mismanagement of the estate funds, and " the question then arose as to whether the trustees of Mrs. Short's settlement were entitled to payment of the whole of Mrs. Short's moiety before the trustees of Mrs. Parratt's settlement could take anything, or whether the funds of each settlement must bear one-half the loss." In answering this question specifically the court said, " she therefore was trustee for the next of kin of the residuary estate after the due administration of the estate. * * * She could not herself take any of the money without accounting for the money that had been lost. If any of the money had been misappropriated, she could claim nothing until the breach of trust had been made good. * * * As administratrix she became trustee of the estate and though she is one of the persons interested, in case a breach of trust has been committed, the equity is paramount to her claim, and she cannot claim until the breach has been made good." Referring to another case, the court continued, " it made no difference, and it was held that he had assigned his interest subject to the possibility of an equity to be asserted against him as trustee. It is no matter whether the assignment was made before the breach of trust or after; the rule is that the trustee cannot take anything until after the breach of trust has been made good. The equity is paramount to any right of the trustee."

Similarly it was said by the court in *Stanley* v. *United States Nat. Bank* (110 Ore. 648; 224 P. 835), " The right to retain a legacy or distributive share from a debtor to the estate, exists in the case of an indebtedness to the estate arising out of the conversion, waste or misapplication of assets by a legatee or distributee while acting in the capacity of executor or administrator."

Our Court of Appeals has spoken upon the subject in *Clapp* v. *Meserole* (1 Keyes, 281; 1 Abb. Ct. App. Dec. 362), wherein it was said, " Being both executors and legatees, the realization of their legacies depended upon the faithful performance of the trust, and it was not possible for the legatees to separate the interest from the duty. He could not convey away the former and then waste the assets with which it should have been paid. The duty which attached to the legacy in the hands of the legatees, followed it into the hands of the appellant."

The executor's legacy will be surcharged with the full amount found due upon this accounting by the executor to the estate.

Settle decree on two days' notice or by consent.